## BENJAMIN F. ROBEY *vs* THE COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY.

*Duty of Approving Accounts of Officers Imposed by Statute on Judges is not Judicial in its Nature—Constitutional Law—Payment of Fees to Officers in the Discretion of the County Commissioners—Mandamus to Compel Action.*

A statute which requires Judges of the Circuit Courts to approve the accounts of certain officers before payment of such accounts by the County Commissioners, imposes upon the Judges a duty not judicial in its nature, and is unconstitutional under the Declaration of Rights, Art. 8, which ordains that the legislative, executive and judicial powers ought to be forever separate and distinct from each other, and no person exercising the functions of one of said departments shall assume or discharge the duties of any other.

When a statute provides that for certain services the County Commissioners shall pay such compensation as they in their discretion may deem right and proper, a *mandamus* cannot be issued requiring the commissioners to pay a sum claimed for such services when they have not ascertained the same to be right, but if the commissioners refuse to act at all, a writ of *mandamus* will lie to compel them to act, although it could not mould their action.

*Code*, Supplement, Art. 36, sec. 2, provides that no charge for officers' fees shall be paid or allowed by the County Commissioners of certain counties in criminal cases tried before justices of the peace, but in lieu

of the fees prescribed in general, the commissioners may pay to the officers performing those services such compensation as the commissioners may in their discretion deem right and proper. *Held*, that *mandamus* will not lie to compel the County Commissioners to levy or pay a particular sum as compensation in this class of cases, or to allow fees, but the writ will lie to require them to act upon the claim made for such fees.

*Code*, Supplement, Art. 36, sec. 2, provides that in certain counties of the State no account for fees for services rendered by certain designated officers shall be allowed by the County Commissioners until said account has been submitted to and approved by the Judges of the Circuit Court of said county, or a majority of them. Petitioner, the sheriff of one of these counties, asked for a writ of *mandamus* to compel the County Commissioners thereof to pay him certain fees for services rendered in his official capacity. The Judges of the Circuit Court had not approved petitioner's account. *Held*,

1st. That the statute impliedly imposes upon the Judges the duty of approving the accounts in question before payment thereof by the commissioners.

2nd. That the duty of auditing the accounts of the designated officers thus imposed upon the Judges of the Circuit Court is not judicial in its nature, and the Judges being under no legal obligation to approve such accounts, that part of the statute which prohibits the payment of the fees without their approval is nugatory.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER, JJ.

*Charles H. Stanley* for the appellant.

The contention of the appellant is :

1st. That being entitled as sheriff to certain fees he cannot be deprived of the same by the refusal of the Judges to approve his account or of the commissioners to act on it. A large part of his account is for charges within their discretion, but if they decline to even exercise the discretion, unless the Court acts, and the Court declines to act, he is absolutely remediless in the premises. He cannot maintain against them a suit at law, except for such fees as the law fixes. The remedy asked for is to compel them to act ; at least exercise their discretion. *County Commissioners* v. *Melvin*, 89 Md. 37.

2. That if the only fees which the Act refers to are fees fixed by law, other fees, such as taking prisoners to the penitentiary, the house of correction and insane persons to asylums and fees in criminal matters before justices, are matters in the discretion of the County Commissioners, as the custodians of the public funds, and are governed by the special circumstances of each case, and the appellant has the right to have this account audited.    Act of 1896, chapter 409.

3. If the object of the Act is that the judges are to approve the fees fixed by Article 36 of the Code, it is submitted that where a law gives an officer duly elected and qualified certain fees belonging to his office, an Act requiring the judges to approve or disapprove what he is legally entitled to and otherwise depriving him of them is void, as his compensation has already been fixed by the Legislature, which is the proper authority, and is not to be changed by others, unless it be questioned that he did perform the services, and if so, he should be entitled to a hearing to prove he did.

4. The general law provides that the County Commissioners shall levy all needful taxes, and pay and discharge all claims against the county, and it seems to be a matter in their discretion to allow or disallow any claim which is not absolutely demandable by law.    *Code*, Art. 25, secs. 7 and 8.

5. As to fees fixed by law, the sheriff can, it is submitted, maintain an action by proving the services, that is, for the fees fixed by law, and the claim of $432.90 seems to be exclusively of this character of fees.    *Code*, Art. 36, sec. 28.

6. The *mandamus*, it seems, would not lie against a majority of the judges to compel them to act.    *Goldsboro* v. *Lloyd*, 86 Md. 374.

7. If it be that the compensation of the sheriff is in the discretion of the County Commissioners as to the amount of pay, and the Act of 1898 forbids the County Commissioners to exercise the discretion until the Court exercises its discretion and passes on the account, and the judges decline to act *pro* or *con*, and can at the same time say they "believe that many of the charges are illegal, and others grossly extravagant, and

advise the commissioners not to pass the account until first approved," and then decline to approve any part of it, (without saying which are illegal and which extravagant), it does seem that it would absolutely deprive the appellant of any remedy and be in direct violation of the well-established principle, that where there is a right there must be a remedy. But in this case, as we understand it, and as stated in the petition, there was and is no desire to deprive the appellant of his rights, but a desire to have the question passed upon, and the counsel for the appellant has pursued this course in fairness to all concerned.

8. It is submitted, that the remedy sought in this case is the proper way to bring the matter to a judicial determination, and there is no other way. *Pumphrey* v. *M. & C. C. of Balto.*, 47 Md. 145: *O'Brien* v. *County Com.*, 51 Md. 15; *Worcester Co.* v. *Melvin*, 89 Md. 37. "Where an officer or tribunal refuses to exercise its discretion, a writ of *mandamus* will issue to compel them to act, but will not direct the manner of their action or interfere with their discretion." *Wood on Mandamus*, 3rd ed. 42: *McCullough* v. *Mayor and City Council of Brooklyn*, 23 Wendell, 459; *High on Extraordinary Legal Remedies*, sec. 42. *Mandamus* lies to prevent a failure of justice. 4 *Waite's Actions and Defenses*, 357; *Manger* v. *Board of Examiners*, 90 Md. 659.

9. The object of this proceeding being to compel the County Commissioners to exercise their discretion in passing or paying or refusing to pay so much of the account as is within their discretion, and to require them to pay so much as the appellant is entitled by law as fees fixed by law, it is submitted that *mandamus* lies ; unless it be that a public officer is not entitled to any compensation, if the judges take the position that they will neither approve nor disapprove, as provided by the Act of 1896, chapter 409, it is, therefore, insisted that said Act is not valid legislation if it can thus be disregarded by the Judges; and further, that if a majority of the Judges of any circuit believe the Legislature has no right to impose this duty upon them, they are right in refusing to act,

and the County Commissioners have no right to refuse to consider the appellant's claim, if the Judges so hold.

10. For the purposes of this case, if it be the opinion of the Appellate Court that it is the duty of the Judges to go over and approve or disapprove the entire account, the appellant is then in a position to get at least what the Judges think he should have ; if, however, the opinion be to the contrary, then he is in a position to demand of the commissioners what he is legally entitled to, and that the commissioners should exercise their discretion as to fees or services within their discretion, and the object is attained.   But as the case stands he is remediless and deprived of all remedy for a right.

11. If the language of the Judge is to be construed as rejecting the account, then it has been done without an opportunity of being heard, without the constitutional right of trial and without the opportunity of proving his case ; and as the appellees do not even deny the account, but simply say they have not admitted it, his claim stands before this Court as a valid one, and it is respectfully submitted that the Judges intended no such interpretation to be placed upon their action, but desire justice to be done the appellant and only to be advised of their duty in the premises.

It is finally submitted that the Act of 1896, chapter 409, being now section 2 of Article 36 of the Code, and referring to Prince George's County and six other counties, refers, strictly speaking, only to the fees allowed the respective officers by this article, so far as requiring the same to be submitted to the Judges of the Circuit Court, or a majority of them, and as to all other fees—especially those for matters within the jurisdiction of justices of the peace, which constitute much the larger part of the appellant's claim—are matters entirely left to the discretion of the County Commissioners, and that a reasonable construction of the Act, and a construction within the Constitution, would be that when the bill was submitted to the Judges as required, and they failed to act or declined to act, by either approving or disapproving, the County Commissioners should at least act on the matters

within their discretion, and the officer not be deprived of all compensation.

*Marion Duckett* (with whom was *John B. Contee* on the brief), for the appellees:

If the duty to pass upon the State attorneys' accounts, and the account of an attorney appointed by the Court to defend criminals tried before it, is not objectionable, and does not impose non-judicial duties on the Court (*Worcester County* v. *Melvin*, 89 Md. 37), we fail to see why placing the sheriff in the same category should be.   The sheriff is the chief executive officer of the county.   He executes the mandates and sentences of the Court ; is conservator of the peace.   He is the right-hand executive officer of the Court, whose fees for public business are all fixed by law, or embrace work, the character of which is strictly within the line of work the Court is the most familiar with.   Why should it be said to be engaged in a non-judicial duty in passing upon an itemized bill of fees of an officer whose *fees are all fixed by law* and who could judge better whether such fees are right or wrong or the value of the details, form and labor in executing Court orders, sentences and decrees than the Court itself?   What are the County Commissioners supposed to know about such matters ? They are not lawyers, know nothing about what fees are allowed by law, nor what work is involved in executing a Court's orders and mandates, nor when they are properly executed and when they are not, nor the responsibility of such work.   Who is interested in the sheriff's account but the sheriff himself and the Court ?   There must be some one the sheriff shall submit his account to, and why not the Court ?   If the Court is the final referee in such matters where is the danger of forestalling or entrammelling judicial function or duty ?

It has never been held that the power to appoint school commissioners by the Judges of the Circuit Court for Prince George's County (exercised by them for many years, though now changed), was unconstitutional.   The duty of passing upon the sheriff's acccount has been performed, we are ad-

vised by the Court for more than twenty-four years, and Courts will not hold laws so long recognized and often acted upon as unconstitutional. The ruling might be more dangerous than the exercise of the power. We submit there is nothing whatever unconstitutional in the Act of 1896, ch. 409.

That part of the Act which we may designate as *new legislation*, relating to officers' fees in cases where criminal jurisdiction has been conferred by law upon justices of the peace we confess is rather difficult of interpretation.

Now, the jurisdiction conferred by law on justices of the peace in criminal cases (see supplement to Code in Public General Laws), is in all cases of assault without any felonious intent; assault and battery, petty larceny, where the value of the stolen property does not exceed $5; misdemeanors not punishable by confinement in the penitentiary; in all misdemeanors, declared such by law, where the punishment is a pecuniary fine or penalty, or imprisonment in jail or the Maryland House of Correction. In all such cases the accused has a right to pray a jury trial. Fees earned by officers in this class of business do not seem to be fixed or scheduled by law, but are wholly left to the payment "of such compensation as the County Commissioners may, in their discretion, deem right and proper." There is nothing in this legislation requiring the county Court to pass upon fees so earned. Indeed, it would appear absurd to require the Court to pass on any such accounts, where there are no legal scheduled fees, and where the compensation is solely and wholly referred to another tribunal whose duty it is made to fix the compensation. We therefore contend that all that part of Robey's account which embraces charges under criminal process before a justice of the peace, should be eliminated from it and submitted to the County Commissioners as a separate account first and last.

McSHERRY, C. J., delivered the opinion of the Court:

This was an application to the Court below for a writ of *mandamus* to compel the County Commissioners of Prince George's County, to take action on, and pay the relator certain

accounts for sums of money claimed by him as fees due for services rendered by him to the public in his official capacity as sheriff of the county.   The County Commissioners resist the payment on the ground that the accounts have not been approved by the Judges of the Circuit Court for that county. There is a statute, *Sec. 2, Art. 36, Sup. Code,* which enacts that "no account for officers' fees by any of the several officers herein named, rendered for services to or in behalf of the counties of this State in this section named, shall be allowed by the County Commissioners thereof until said account has been submitted to and approved by the Judges of the Circuit Court for said county or a majority thereof; and no charge for officers fees shall be paid or allowed by the County Commissioners aforesaid, in any criminal case where jurisdiction to try, hear and determine the matter charged against the party accused has been conferred by law upon justices of the peace, but the County Commissioners may levy or pay to the officers performing service in such cases, such compensation as they, in their discretion, may deem right and proper."   And then the counties to which the section is made applicable are named, and Prince George's is one of them.   The officers referred to in *Art. 36 of the Code* are attorneys, bailiffs, clerks of courts, commissioner of the land office, constables, coroners, criers, justices of the peace, notaries public, register of wills, sheriffs and surveyors.   The accounts in litigation were not approved by the Judges to whom they were submitted, because the Judges were divided in opinion as to the constitutionality of the statute.   Thus the County Commissioners declined to pay the accounts because of the refusal of the Judges to certify to them ; and the Judges refused to certify to or approve the accounts because they did not agree that it was their duty to do so.

It is clear on the face of the statute that provision is made as to compensation for two distinct classes of services.   First, services which are specifically designated in *Art. 36* of the Code and for the performance of which fees are prescribed. Secondly, services which are rendered in criminal cases heard

before a justice of the peace in the exercise of a statutory jurisdiction and for the performance of which services the schedule of fees is not to apply.   With regard to the latter it is obvious at a glance that the Judges of the Circuit Court have nothing to do; and the allowance or disallowance of compensation for these services depends in no way upon the approval or the disapproval of the Judges.   Over the allowance of compensation for these services the County Commissioners have exclusive control.   Indeed, the statute distinctly declares that *no* charge for officers' fees shall be paid or allowed by the County Commissions in criminal cases tried before a justice of the peace having jurisdiction to hear and determine the matter charged, but in lieu of the fees prescribed by the Code, the Connty Commissioners may levy for and pay to the officers performing those services such compensation as the County Commissioners may in *their* discretion deem right and proper. With respect to such services the schedule of fees is expressly abrogated, and in place of it the whole matter as to compensation is unreservedly committed to the discretion of the County Commissioners.   It is perfectly clear that no *mandamus* will lie to compel the County Commissioners to levy or pay a particular sum as compensation for the services rendered in this class of cases.   Whilst a writ of *mandamus* may be used to compel an inferior tribunal to act on a matter within its jurisdiction, it cannot control the exercise of that tribunal's discretion.   In other words, the writ may be issued in such an instance to compel *something* to be done, but not to command *what* shall be done, *In re Burtis & Graff* 103 U. S. 238; *Ex-parte Newman* 14 Wall. 152; *In re Parsons*, 150 U. S. 150. Accordingly where fees are to be determined by County Commissioners *mandamus* will not lie to compel their allowance, *State* v. *County Court*, 83 Mo. 559; but it will lie to require the County Commissioners to act upon the claim made for such fees.

With respect to the fees included in the first of the two classes hereinbefore indicated a different question is presented. It is expressly declared that no account for such fees shall be

allowed by the County Commissioners until such account has been submitted to and approved by the Judges of the Circuit Court or by a majority of them ; and the question is, can the Legislature impose upon the Judges the duty of approving all these various accounts and make that approval a condition of their payment ?   In other words, is this precedent condition valid ?   Whilst the statute does not in terms impose this duty on the Judges, it does so in legal effect.   The County Commissioners are prohibited from paying these accounts until they are approved by the Judges, and this is tantamount to saying that the Judges must approve them.   Payment is made dependent on a condition, and that condition involves the doing by the Judges of an act, and hence the duty to do that act is necessarily imposed on the Judges. Let us look for a moment at this provision of the statute and scan its scope and operation.

In the counties which are included in the statute, the accounts of every attorney, every bailiff, every clerk, every constable, every coroner, every crier, every justice of the peace, every notary public, every register of wills, every sheriff and every county surveyor, in so far as those accounts contain charges against the county, are directed to be disallowed by the County Commissioners, though the services have been performed, unless the accounts have been approved by the Judges. The effect of this, if the legislation be valid, is to require the Judges to examine these accounts and to pass upon them. Now, it is obvious, that before a Judge can approve an account he must know that the account is accurate.   Whether an officer is entitled to be paid by the county a particular fee in a given case, depends on his having rendered the service charged for ; because the law fixes the *amount* of the fee and his right to receive it can only arise after he has done the service.   It comes to this, if the Judge must approve the account, he must examine into the *facts* to see whether the services have been rendered.   To determine that question evidence of some kind must be adduced.   Take, for illustration, the account of a justice of the peace.   The amounts which that

officer may lawfully charge for issuing a writ, for issuing a summons for witnesses or for drawing a commitment are plainly set forth in the schedule of fees contained in *Art. 36 of the Code* ; but before the Judges could approve such an account they must know whether the services have been rendered, and they can only know this after evidence has been adduced to show it.    They must then go into an inquiry of fact, perhaps require the attendance of witnesses from remote sections of the county and thus in reality become mere auditors for the County Commissioners.    Is this the performance of a judicial function which the Legislature may lawfully impose upon the Judges ?

It is not alone the mode in which a thing is done that determines the character of the thing.    The Legislature may inquire by evidence into the expediency of enacting a particular law ; but the enactment of the law thereafter would be no less an exercise of legislative power, because preceding the enactment a distinct judicial function had been exercised in deciding upon the propriety of enacting it.    So a Court which has no legislative power may, in the administration of justice, prescribe rules having the force of statutes, but adopted in virtue of its inherent judicial power.    Though the auditing of an account involves an inquiry into the accuracy of the items which make up that account and therefore requires an investigation as to whether the services charged for were actually rendered, this function is not a judicial function when imposed upon Judges and when it is to be performed by them in the *ex-parte* method prescribed by the statute.    The fact that an examination of evidence has to be made, which examination is similar to the examination which would be made were the function strictly judicial—were it a proceeding between parties—cannot make that function judicial when it is merely a means of ascertaining the correctness of an account chargeable against the public.    If a Judge may be lawfully required to examine each item of the numerous accounts of the various officers specified in *Art. 36 of the Code*, he would be forced, in discharging the duty of auditor for the County Com-

missioners, to neglect his real judicial functions. It must be borne in mind that the duty to approve these accounts is not a duty required to be performed in a judicial proceeding. In a suit between the officer and the County Commissioners for the recovery of these fees, the Judge would act judicially upon precisely these same matters; but the statute undertakes to impose on him when there is no judicial proceeding, the duty to audit these accounts, though the County Commissioners are just as able to investigate them as the Judge is.

The 8th Art. of the Declaration of Rights ordains: "That the legislative, executive and judicial powers of government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said departments shall assume or discharge the duties of any other." Can a Judge, who exercises the functions of the judicial department, be required to assume or discharge the duties which pertain to either of the other departments? The decided cases furnish many illustrations of unsuccessful efforts by the legislative department to exercise judicial functions, and many instances of attempts to confer upon the judicial department duties which were either executive or legislative. CHIEF JUSTICE MARSHALL said in *Wagman* v. *Southard*, 10 Wheat. 46: "The Legislature makes, the executive executes and the judiciary construes the law." The obvious purpose in the division of powers between the departments of government, was to prevent the same officers from exercising over the same subject the functions of legislator, executive and Judge. Such a union of functions would be a menace to civil liberty. There is no difficulty in recognizing a plain infraction of the organic prohibition; but as the act approaches the boarder line dividing these departments it may not be so easy to determine on which side of that line it belongs. "The main difficulties," said the Court in *Appeal of Norwalk St. Ry. Co.*, 69 Conn. 576; s. c., 39 L. R. A. 794, " result from a failure to distinguish between the exercise of a legitimate power and the employment of necessary means for exercising that power;" and it may be added that the demarcation is manifested not by ascertaining

what department exercises the power, but by determining to what department the power property belongs. It is of the very essence of a judicial function that it shall not be arbitrary, but that it shall be a proceeding between parties. *In re Saline County*, 45 Mo. 52. If the power is one which essentially belongs to another department of government, then the possession by that department of the means necessary for exercising that power does not make the power a judicial power, though the means so employed in its exercise are those which would be appropriate, and would be employed by a Court, were the power strictly a judicial one.

Prior to the *Act of 1870, ch. 441*, the duty to determine whether the items charged in an officer's account against the county were correct devolved wholly upon the County Commissioners, except when suit was brought in Court to recover the amount claimed. The commissioners possessed ample means for properly performing that duty. The transfer of the duty to the Judges in the counties named in the Act, did not, for it could not, convert that duty into a judicial duty. The Act, as now in force, applies to only seven counties. As originally passed in 1870, it included counties which are not affected by it now. Is the duty of passing on these accounts in the several counties where the Act does not apply a nonjudicial duty; and a judicial duty only in the counties where it does apply? If the character of the duty is to be determined by the official who is charged with performing it, then in the counties which were once, but now are not, subject to the statute the duty has been both judicial and non-judicial at different times. If the approval by the Judges is the exercise of a judicial power, then, in those counties where the Act does not apply, the County Commissioners are exercising judicial powers. The mere fact that a Judge is called on by statute to execute a certain function does not make the function a *judicial* function. Its character is dependent on its qualities, not on the mere accident as to the person who has been designated to do it. The qualities of the act and not the character of the actor must determine the nature of the act. As said

in *ex-parte Candee*, 48 Ala. 399, "It by no means follows that a duty is judicial because it is to be performed by a Judge; if in its performance he does not exercise the powers that appropriately appertain to his judicial office, it is ministerial, and not judicial, although its performance requires the exercise of his judgment." If its qualities make the act a judicial act, it continues to be judicial, no matter what official undertakes to perform it; otherwise the test would be found not in the nature of the act done but in the official character of the person assuming to do it, and there could, then, never be a question as to whether a designated act was an invasion by one governmental department of the province of another, because if the act became judicial by reason of being assigned to a Judge for performance you would have to go no farther than to ascertain that it *had been* so assigned, and thereupon, no matter how obviously executive it might be, it would have to be treated as judicial. Now, as the act of approving, or the duty to approve, these accounts was committed to no judicial officer prior to 1870, it was obviously not regarded as a judicial function, and the conferring of the power on a Judge cannot make the act or the duty judicial. If judicial when conferred on a Judge, and non-judicial when not conferred on him, the same act would be in one county judicial, whilst in an adjoining county it would not be. This would make the character of the act depend on the locality in which it is to be performed.

But the statute contains intrinsic evidence that the duty which it imposes on the Judges is not judicial. It requires these accounts for officers' fees to be approved by the *Judges* or by *a majority* of them. Were the duty judicial, *one* Judge would have, under the Constitution, as much authority to discharge it as a *majority* would possess, because *Sec. 21, Art. 4*, of the Constitution provides that: " One Judge, in each of the above circuits, shall constitute a quorum for the transaction of any business."

The question just discussed is essentially different from the one passed on in *Melvin's case*, 89 Md. 37. We were there considering the power of the Legislature to require the

County Commissioners to pay a claim ascertained by some other tribunal than themselves. Various instances were cited wherein the County Commissioners were directed to pay sums of public money upon the requisition or order of other officers. It was held that the Legislature had the power to compel these subordinate governmental agencies to apply the public funds to public uses designated either by the General Assembly itself, by the school commissioners or by the Court; and that such an exercise of power was no invasion of the legal rights of the County Commissioners. But here the question is, not whether the County Commissioners are bound to obey the approval by the Judges of an officer's bill for fees, but whether the Legislature can require the Judges to approve the bill and to become auditors for the County Commissioners. The two questions are radically different. The decision of the one does not touch the other. The determination of what fee should be paid to counsel assigned by the Court to prosecute or to defend a prisoner, could nowhere better be lodged than with the Judge of the Court where the services are rendered ; but it is quite apparent that the drudgery of auditing an account—of ascertaining as a matter of fact whether sundry services have been rendered by a sheriff—is a totally dissimilar thing, and stands upon a totally distinct footing.

The views we have expressed establish these propositions, *first*, that with the part of the accounts which relates to the fees charged in criminal cases heard and determined by justices of the peace in the exercise of their special statutory jurisdiction, the Judges have nothing to do, for the Act of Assembly confides to the discretion of the County Commissioners the allowances which may be made for such services. Secondly, that the Judges were under no legal obligation to approve the other portion of the accounts which has reference to the fees prescribed by *Art. 36 of the Code*, because the duty imposed upon them is not a judicial duty ; and that so much of the statute as prohibits the payment of these fees without the approval of the Judges is nugatory. Thirdly, that as the County Commissioners are vested with a discretion to allow

such compensation in criminal cases heard by justices of the peace as they may deem right and proper, a *mandamus* cannot be issued requiring the commissioners to make a levy for the sums claimed when the commissioners have not ascertained those sums to be right and proper.   Fourthly, that if the County Commissioners refuse to act at all or to exercise their discretion, a writ of *mandamus* would lie to compel them to act, though it could not mould or direct their action.

The petition states that the sums here claimed were actually levied by the County Commissioners.   The answer admits this, but avers that "they did not thereby admit the claim was due or in any way bind themselves to pay it."   The case was heard below on the petition, the answer and a demurrer to the answer.   The demurrer was overruled and the petition was dismissed.   There is no evidence in the record.   We are, therefore, unable to say what effect is to be given to the levy, or to determine whether, as made, it precludes the commissioners from disputing the items of the accounts.   If they have exercised their discretion and approved the accounts and then included them in the levy, nothing remains for them to do but to pay the relator, and a *mandamus* might issue requiring them to do this.   *Robb* v. *Carter*, 65 Md. 321.   If they have not exercised their discretion, but have "declined to take any action whatever on the account" because they believed "said account should first have been approved by the Judges of the Circuit Court * * * or a majority thereof," then a *mandamus* might issue requiring them to act upon those accounts.   When the demurrer was overruled these inquiries were left open and were not passed on.   The petition ought not, therefore, to have been dismissed until these questions had been solved.   We will reverse the order dismissing the petition and remand the cause so that further proceedings may be had in conformity to the views we have expressed in this opinion.

*Order reversed with costs above and below
and cause remanded.*

(Decided December 13, 1900.)