# THE BOARD OF SUPERVISORS OF ELECTION FOR WICOMICO COUNTY *vs.* GEORGE W. TODD ET AL.

*Constitutional Law—Invalidity of Statute Requiring Judge to Order an
Election to be Held.*

The Act of 1896, ch. 195, provides that whenever half of the registered,
qualified voters of Wicomico County, or of any election district thereof,
shall petition the Circuit Court to submit the question of granting or not
granting licenses for the sale of liquors at the next general election to be
held in the county, the Court shall order the Sheriff of the county to
give notice of the election, etc.   *Held,* that this statute imposes upon
the Judges of the Circuit Court the duty of counting the names upon the
petition, of ascertaining whether these names are those of voters at the
last election for Governor and of ordering an election to be held ; that
the duty so imposed is not judicial in its nature, and that consequently
the Act is void because in conflict with the Bill of Rights, Art. 8, which

: declares that the legislative, executive and judicial powers of govern-
ment ought to be forever separate and distinct from each other and no
person exercising the functions of one of the departments shall assume
or discharge the duties of any other ; and Art. 33 of the Bill of Rights
which declares that no Judge shall hold any other office or political
trust or employment of any kind whatsoever.

Appeal from the Circuit Court for Wicomico County (HOL-
LAND, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alonzo L. Miles* and *Joseph N. Ulman* (with whom were
*Samuel J. Harman, Samuel R. Douglass* and *Miles & Stanford*
on the brief), for the appellants.

First. Chapter 195 of the Acts of 1896 is unconstitutional
in that thereby the Legislature undertakes to impose upon the
Judges of the Circuit Court of Wicomico County a non-judi-
cial act, and to make of the State Judiciary a part of the elec-
tion machinery.

The principle of the separation of governmental powers was
laid down by Montesquieu, and it is found expressed in the
Constitution of the United States, and the Constitution of all
the States except Kansas, North Dakota, Ohio, Pennsylvania,
Washington, and Wisconsin.   Notwithstanding this very gen-
eral acceptance of the principle by the constitutional law-mak-
ing bodies, judicial interpretation has given a wide divergence
to the force of its application in the various States.   In some
jurisdictions, a philosophical accuracy has impelled the Courts
to lay much stress upon the principle, to construe strictly the
constitutional expression of it, and to regard it as one of the
inalienable and unalterable safeguards of liberty.   The Court
of Appeals of Maryland has invoked it frequently during the
past five years ; and, it may be said in passing, this Court has
in every recent case construed the provision strictly.   In other
States; again, the principle has been brushed aside with a ju-
dicial wave of the arm, as expressing a fine distinction too
theoretical to merit serious consideration.   In determining the

value of decisions cited upon the specific point in issue from
States other than our own, it will be imperative, therefore, to
examine closely the judicial tendency in such States in rela-
tion to the broad principle, and to give to such decisions more or
less weight according as whether the law of the State of their
origin is or is not in accord with that of Maryland regarding
the general doctrine.

There are two reported cases in which the Courts have been
called upon to consider the force of this constitutional provi-
sion in reference to laws closely similar to that here in ques-
tion.    These are *Dickey* v. *Hurlburt,* 5 Cal. 343; and *State,
Paul, etc.,* v. *Judge of the Circuit Court,* 1 L. R. A. 86, 50 N. J.
L. 585–610. The first case declared unconstitutional a statute
providing that "whenever the inhabitants of any county of this
State (California) desire to remove the seat of justice of the
county from the place where it is fixed by law or otherwise,
they may present a petition to the county Judge, praying such
removal, and an election shall be held to determine to which
place such removal shall be made."   It was held by the Cali-
fornia Supreme Court that this Act was unconstitutional, be-
cause it imposed upon the judiciary plainly ministerial and leg-
islative functions.   To this extent, it would seem to be a
strong authority for the appellant's contention. But the Court
qualifies its opinion by calling attention to the fact that the
Act not only required the Judge to call an election when
properly petitioned to do so, but imposed upon him the fur-
ther duty of determining and fixing the time, place, and man-
ner of holding it; and the Court said that "if the Legislature
had merely imposed upon the county Judge the duty of
making proclamation of the election," then its decision would
have been otherwise.   That is to say, if the Judge is called
upon to do an unconstitutional act, but that act is not essen-
tial to the completion of the final act, then the final act will be
held none the less valid—just as in the case where a non-es-
sential preliminary act is altogether omitted to be done.   To
support the distinction, the Court refers to its own decision in
*The People, etc.,* v. *Brenham,* 3 Cal. 447. That was a case not

of an unconstitutional act, but of the total omission of the performance of an act. The charter of San Francisco provided for a general election for Mayor, and for other officers, on a certain day in each year. Provision was also made for certain special elections, on certain days ; and then it was further provided that *all* elections should be preceded by a "call" on the part of the Common Council. In 1851, a general election was held, and Mr. Brenham was elected Mayor. But his predecessor refused to yield him the office, claiming that the election was irregular, among other reasons, because the Council had failed to "call" an election. It was held, that notwithstanding this omission, the election was a valid one. And the case is cited, as stated above, as holding that the omission to call an election when the time and place of holding it are fixed is so unimportant in its nature as to constitute no impediment to a valid election. But it does not stand for this proposition, and it is difficult to see how it could have been so cited. If an election is not "called" or otherwise provided for by law, there can be no election ; and the mere casting of certain votes would be a nugatory act. And the Court in *People* v. *Brenham*, did not say what the opinion in *Dickey* v. *Hurlburt* quotes it as saying. That is to say, the opinion of the District Judge in *People* v. *Brenham*, afterwards affirmed by the majority of the Supreme Court, declares that "the duty of the Common Council" (to call elections) "only applied to special elections (3 Cal. 481), general elections being otherwise provided for." That is what the Court means when it says that the act was non-essential. The election could be held, and was validly held without the performance of the act at all, because there was no law plainly ordering the act to be done. Therefore, when the later case in 5 Cal. says that it is a non-judicial function for Judges to call an election, and to fix the time and place of it, and that an act requiring this is unconstitutional ; but that merely to call an election, if its time and place are fixed, though non-judicial, would be so unimportant that an election held in pursuance of such call would still be valid, the distinction which it makes is not supported by the

authority relied upon.   That authority would justify the statement that "*if an election were otherwise regularly provided for by statute, and if it were further incumbent upon some Judge merely to announce it*, then that announcement, though non-judicial, would be so non-essential that the holding of the election would nevertheless be constitutionally provided for." And even this would be merely a dictum upon a question not presented in the case.   But if, as in the case of the Maryland Statute, the election were a special election, and would not be held, and none of the machinery of holding it would be set in motion, save by the act of the Judge, then, if that act be non-judicial, the whole election must be unconstitutional—*i. e.*, the case of *Dickey* v. *Hurlburt*, in 5 Cal., would be an authority exactly in point.   Therefore, one of the two States in which this specific question has been passed upon, has decided it in accordance with the views here contended for.

The other case on this specific point, *State, Paul, etc.*, v. *Judge, etc.*, 50 N. J. L. 585; 1 L. R. A. 86, was decided by a divided Court, eight judges voting to declare the act constitutional, seven dissenting.   The Court gave very little attention to this branch of the case; and it is disposed of in the majority opinion quite summarily.   The act there in question empowered the Judges to decide when the circumstances had arisen which required an election on the question of local option, and thereupon to order and fix the time of an election. The main question before the Court was whether or not a local option law was constitutional in itself; and the point here being considered was adverted to only incidentally.   It was decided, without the citation of an authority, that, such an act was neither judicial, executive nor legislative, but partook of the nature of all three; that the distinction was impractical and unimportant in any event; and that the act would not be declared unconstitutional for this reason alone.

It is submitted that this decision, though on almost the precise point, can have little weight in Maryland.   It is the only decision on the constitutional question handed down by the New Jersey Court of Appeals and Errors; and it is entirely

contrary in spirit to two New Jersey Supreme Court cases which it ignores. (*In re Application of Cleveland, Mayor*, 22. Vr., 311; *In re Ridgefield Park*, 25 Vr. 288.) If it establishes anything, it establishes that in New Jersey, this constitutional provision is looked upon as of small weight. But that is directly contrary to the present policy of this State; hence, though almost "on all fours" with the case at bar as to its facts, it cannot be regarded as an authority entitled to great consideration.

The Maryland definition of a judicial act. "The mere fact that a Judge is called on by statute to execute a certain function does not make the function a *judicial* function. Its character is dependent on its qualities, not on the mere accident as to the person who has been designated to do it. The qualities of the act, and not the character of the actor must determine the nature of the act." *Robey* v. *Prince George's County*, 92 Md. 150, 162. "It is of the very essence of a judicial function that it shall not be arbitrary, but that it shall be a proceeding between parties." *Ibid*, p. 162.

It is held unconstitutional for Judges to be called upon to audit accounts, 92 Md. 150, *supra*, or to appoint a board of visitors to a county jail. *Beasley* v. *Ridout*, 94 Md. 641, 659. On the other hand, it has been held a judicial act for a Judge to determine whether an applicant is entitled under the statute to a license to sell liquors, because, *under that statute*, it was necessary for the Judge to decide whether the signers of the certificate presented by the applicant were freeholders or not; whether they were reputable or otherwise; whether they were residents of the neighborhood, and what was to be considered the neighborhood. These questions are raised by the filing of a petition on the part of the applicant, and the filing of counter petitions or objections, a *procedure specifically provided for by the statute*. An issue is thus presented which must be decided "by hearing the testimony of witnesses as to whether the facts, which are made by statute a pre-requisite to the issue of the license existed, or not, and then by the construction of the statute, and its application to the facts of the case." *McCrea* v. *Roberts*, 89 Md. 238, 252.

Whatever may have been the law in earlier years—as in *Crane* v. *Meginnis*, 1 G. & J. 476, or *State* v. *Chase*, 5 H. & J. 298—whatever may be the law in other States—and we freely admit that *Beasley* v. *Ridout*, 94 Md. 641, represents a minority doctrine—the law of this State today is clear and unequivocal. It regards the principle of the tripartite separation of powers as an "insuperable objection" to the validity of a law which contravenes it; and it defines a judicial function as JUDGE COOLEY defines it, "to adjudicate upon and protect the rights and interest of individual citizens, and to that end to construe and apply the laws." *Cooley Constitutional Limitations*, p. 109; 89 Md. 253.

Section 1, chapter 195 of the laws of 1896, directs the Judges of the Circuit Court for Wicomico County to order an election. It seeks to make of them a part of the election machinery of the State. Its provisions are a mandate directed to the judiciary and proceeding from the Legislature; no "case" is presented for judicial review; no disputed questions of law or of fact are submitted for judgment under the law; there are no parties,there is no evidence. A petition is presented. If it contains a majority of the names appearing in a certain list, then the judge *must* act. If it does not contain such a majority, he *cannot* act. This requires the judge to count, not to judge. It is more clearly ministerial than the auditing of accounts. Nothing can be conceived which involves fewer judicial elements. Suppose for a moment that the law is held constitutional. Then if a petition containing the requisite number of names were presented, and the Judges refused to order an election, what would be the appropriate remedy? An appeal? Certainly not. There could be no disputed question as to the law or fact of the case. What then? Certainly only a *mandamus*. But "it is the settled law of this Court that one Judge of a Court has no jurisdiction to issue a writ of *mandamus* against the other Judges of the Circuit." *McCrea* v. *Roberts*, 89 Md. 249. The only exception is "that in cases where a tribunal refuses to exercise the judgment and discretion imposed by a statute, or arbitrarily exceeds its jurisdic-

tion, a *mandamus* will lie." *Miles et al.* v. *Stevenson*, 80 Md. 358. But this statute imposes no exercise of judgment or discretion. It simply says, "if a petition is presented, order an election." That leaves nothing to judicial discretion—hence it imposes a non-judicial act upon the judiciary.

It is non-judicial because it contains none of those elements, which render an act judicial according to the definitions laid down by this Court. It is an act definitely commanded to be done. It differs radically from the act of judgment required by the statute passed upon in *McCrea* v. *Roberts*, 89 Md. 238, because that statuate provided for petition and counter petition, for parties, and for a "case;" it leaves open numerous questions upon which a judge can pass judgment, and upon which his decision is not arbitrarily prescribed for him by the statute. But this law of 1896 raises absolutely no such questions. It presents no case, but merely directs that the Judge shall count a certain number of signatures, and then pass a certain order. That is clerical drudgery, is a ministerial function of the executive department of the government and the Constitution will not permit the Legislature to impose it upon the judiciary.

Finally, does all this vitiate an election held under this law. We submit that it does. It is said in *Mayor of Baltimore* v. *Board of Police*, 15 Md. 376, 463, "when the Court is satisfied that the Legislature has exceeded its authority, we should no more falter in denouncing the act as void, than we should hesitate in deciding the most unimportant matter within our jurisdiction." Under the decisions of this State the act sought to be imposed upon the Judges is a non-judicial act ; and unless that act be done, no election can be held. *Then an election held because of the doing of that unconstitutional act, which would not have been held unless the unconstitutional act had been done must be a nullity.* If the Judge had not ordered the election, the statute law of the State provided no other means for causing it to be held. Therefore, the non-judicial and unconstitutional act of the Judge is made an absolutely essential part of the election machinery of the State. The *mandamus* requiring the Supervisors of Election "to submit the question

of granting, or not granting licenses to election, and to pre-
pare official ballots in accordance therewith," should never
have been granted, because it recognized as valid an uncon-
stitutional and nugatory act done by the Judge of the Circuit
Court.    The lower Court must be reversed in its ruling which
granted this *mandamus.*    That is the question before this
Court.    But without the *mandamus*, there would have been
no election.    Hence, there is no legal election, and it must be
so ordered.

Moreover, the Constitution says "no person exercising the
functions of one of said departments *shall assume or discharge
the duties of any other*" (*supra*).    This phraseology disposes
of a contention which will probably be raised by the appellees.
They may say—"True it is, a Judge cannot be compelled to
perform a non-judicial function; but if he has done the act,
then it need not be disturbed."    But the section of the Con-
stitution is mandatory.    "*No person shall assume or discharge
the duties of any other department.*"    If a Judge has done such
an act, he has transcended the Constitutional limitations of his
office; and the act so done is entirely nugatory.

Second: The allegations of the petition are not of such a
character as to authorize the Court to issue the writ.    The
petition nowhere alleges that the Supervisors of Election for
Wicomico County could have advertised the question, which
was to be submitted to the people of the ninth election dis-
trict of Wicomico County according to law, after notice re-
ceived.    This is a question of fact, and in an application for
*mandamus* all the facts necessary to the granting of the writ
should be stated.    *Sudler et al.* v. *Lankford*, 82 Md. 149.

Third.    That if an election upon the question of license for
the sale of intoxicating liquors in Wicomico County, as pro-
vided in chap. 195 of the Acts of 1896, can be ordered at
all by the Court, it must be subject to the provisions and after
the notices required by secs. 44 and 47 of chap. 202 of the
Acts of 1896.

Fourth.    That the provisions of secs. 44 and 47 of said Acts
of 1896, with reference to the notice to be given and the pub-

lication to be required before a local question of the kind and character referred to in the petition for *mandamus* in this case can be submitted to the people are mandatory.

Fifth. That even if the provisions of said secs. 44 and 47 of chap. 202 of the Acts of 1896, are not mandatory, then the petition is defective in that it does not allege that there was a sufficient or reasonable time to enable the appellants to comply with the provisions of said sections, and of the other Acts of Assembly governing such cases.    By no construction of the Act can it be maintained that the Election Supervisors are not entitled to a reasonable time in which to comply with its provisions ; and as to what is a reasonable time, they have some discretion which cannot be controlled by *mandamus*. *Wells* v. *Munroe*, 86 Md. 443.

Sixth. That the certification to the Board of Supervisors of Election by the County Commissioners of Wicomico County is defective, and not such as is authorized and required by law. Acts of 1896, ch. 195, sec. 1; 1896, ch. 202, secs. 44, 47.

*John H. Handy* and *Elmer H. Walton*, for the appellees.

The petition is to be addressed to the " Circuit Court," which is required to ascertain the following facts before it can issue the order prayed : The aggregate number of votes cast in the 9th election district at the last election for all the candidates for Governor—to do this they must find from the evidence—for there is no other way to ascertain the facts—when the last election for Governor was held—who and how many candidates were voted for—how many votes in all were cast for Governor—in the said district.    Having found all the above facts, and ascertained the aggregate number of such votes, and the one-half thereof required by the Act, it must then look to the petition to find if a number equal to one-half of that aggregate appear to have signed the petition to the Court.    The number being found sufficient, it must next be found whether the persons whose names are so signed, did in fact sign the petition.    If they did—the Court must then find, if the requisite number of them were registered qualified

voters. They must be found to be both registered and quali-
fied. They might be registered but not qualified. They might
be qualified but not registered.

Again, the Court must find when the next Congressional
election will be held, to enable it to order the question to be
put on the ballots, because the order must be passed within
ten days after the receipt of the petition—and the law contem-
plates the election immediately about to be held. It has to
find, therefore, as a matter of fact, whether there is to be a
Congressional election about to take place. Now all these
facts require evidence and a determination—the exercise of
judgment after hearing the evidence. Nor is this all—the
question as to who were registered qualified voters, involves
questions of law.

In *McCrea* v. *Roberts*, 89 Md. 238, this Court says : " The
statute requires that the applicant for a license shall file a cer-
tificate signed by at least nine reputable freeholders, *bona fide*
residents of the neighborhood in which the applicant proposes
to conduct the business. One of the objections filed to the
appellant's application denied that the certificate thereto an-
nexed was signed by persons possessing the qualifications. It
was necessary to determine whether the signers of the certifi-
cate were freeholders or not ; whether they were reputable or
otherwise ; whether they were residents of the neighborhood
and what was to be considered the neighborhood. It is man-
ifest that these are questions of fact and law upon which the
Judge was required to exercise his judgment, after hearing
the evidence."

But what jurisdiction does the *Constitution confer* upon the
Judges of the Circuit Court ? It says " The said Circuit
Courts shall have and *exercise*, in the respective counties, *all*
the *power, authority* and *jurisdiction*, original and appellate,
which the present Circuit Courts of this State now have and
exercise, *or which may hereafter be prescribed by law.*" Art.
4, sec. 20, Constitution of Md. Does not this section confer
upon them the right to exercise all the power, authority and
*jurisdiction* which the Legislature may thereafter prescribe ?

Did not the Judges accept their offices with full knowledge that the Legislature might under that section prescribe other power and authority and extend the jurisdiction of the Court? Where is the limit to the power of the Legislature in that direction? It may be said that it lies in keeping in view the provisions requiring the legislative, executive and judicial branches of the government to be kept separate. True, but the duty imposed by the Act of 1896, ch. 195, certainly is not legislative—and is no more executive, than the duty of the Court to pass orders and judgments in execution of any law requiring their judgment in its execution. It does not invade the functions of either of the other departments of government.

But suppose the Court could not be legally compelled to perform duties imposed on it by the Legislature, but *does perform them*, is not their action *valid* and *binding* under sec. 20 of Art. 4, Constitution? In the case of *The State* v. *Chase*, 5 H. & J. 304, JUDGE BUCHANAN speaks of such a class of cases as those " a Judge is under no legal obligation to perform." And in the late case of *Goldsborough* v. *Lloyd*, 86 Md. 378, this Court says, " Do these statutes impose a duty on the Judges which is not judicial in its character, and, therefore, a duty which they cannot be required to discharge?" In neither of these decisions does the Court hold that, if the Circuit Court does perform the duty and " exercise power, authority and jurisdiction prescribed by law" such action is a nullity. Years ago, the Legislature imposed on the Judges the duty of appointing School Commissioners, and many of them performed that duty; but was it ever held their action was a nullity and the School Commissioners so appointed illegally appointed and their proceedings void? notwithstanding some able members of this Court individually refused to perform the duty, on the ground it was not judicial. The law requiring the Court to ratify tax collectors sales involves no more judicial duty than that required under the Act of 1896, chap. 195. Yet we do not remember to have heard its constitutionality impeached on the grounds that it was not a judicial function.

JONES, J., delivered the opinion of the Court.

The Act of Assembly of 1896, ch. 195, a public local law of Wicomico County, enacted in its first section "that whenever such of the registered qualified voters of Wicomico County, or of any election district, city or town thereof, as constitute one-half of all the votes cast for all of the candidates for Governor at the last election in said county, or in an election district, city or town thereof, shall petition the Circuit Court for said county for the submission, at the next regular congressional election held in said county of the question of granting or not granting any license for the sale of intoxicating liquors for beverages therein, the said Circuit Court shall, within ten days after the receipt of said petition, issue an order for an election on this question to the sheriff of the county, whose duty it shall be to give the same notice and perform all other acts required of him for the holding of elections under the election law of this State, and subject to like penalties in case of his default in his performance of said duties."

The second section enacts "that such election shall be held and conducted under the provisions of the election law applicable to the said county." The 3rd section provides that after an election so held there shall be no other such election within four years. The 4th section provides how the question thus to be submitted to vote shall be indicated on the ballots; how the preference of the voters upon the question is to be made to appear and be ascertained; how the ballots are to be counted and canvassed in respect to this question; how the result of the voting is to be certified; and how notice is to be given of the result in case it shall "appear that the majority of the votes cast is against the sale of intoxicating liquors for beverages." The succeeding sections of the law in question are provisions for carrying into effect the prohibition of the sale of intoxicating liquors for beverages in the county, election district, city or town as the case may be, according to the submission made in respect to locality, when it appears that a majority of the votes cast upon "the question of granting or not granting any license for the sale of intoxicating liquors," &c., is against the granting of such license.

. This case arises under this law and originated in a petition for the writ of *mandamus* filed in the Court below on the 24th day of October, 1902, by the appellees, George W. Todd and William A. Crew, against the appellants, in which it is alleged that the petitioners "together with four hundred and forty (440) other voters and residents" of the ninth election district of Wicomico County, on the 18th day of October, 1902, presented to the Circuit Court for that county a petition verified by affidavit praying the Court "to submit to the voters of said district the question of granting or not granting any license for the sale of intoxicating liquors for beverages therein * * in pursuance of the provisions contained in sec. 1 of ch. 195 of the Acts of Assembly of Maryland of 1896;" that upon "the hearing of said petition and the motion of the objectors thereto" the said Court passed the following order. "No sufficient cause to the contrary having been shown it is this 23rd day of October, 1902, ordered by the Circuit Court for Wicomico County, Maryland, that in pursuance of sec. 1, ch. 195 of the Acts of 1896, the Sheriff of Wicomico County, Maryland, shall submit to the voters of the ninth election district of Wicomico County the question of granting or not granting licenses for the sale of intoxicating liquors for beverages in said district and the clerk is hereby directed to serve a copy of this order on the said Sheriff of Wicomico County immediately; that in pursuance of said order the Sheriff on the 24th day of October, 1902, notified the County Commissioners of said county and on said day the County Commissioners notified the Supervisors of Election of said county; but said Supervisors refused "to advertise the question" and were "preparing the official ballots to be used in said district without any provision for the submission of the aforesaid question to the voters." It is then prayed that the writ be issued "directed to the said Supervisors of Election of Wicomico County," who are the appellants here, "commanding them to advertise said question, and to prepare the official ballots to be used in the ninth district of Wicomico County —— at the election to be held on November 4th, 1902, in accordance with the provins of section 4 of said chapter 195 of the Acts of 1896."

Upon this petition the Court below passed an order that cause be shown immediately by the appellants why the writ of *mandamus* should not issue. On the same day that this order was passed the appellants filed their answer in which they admitted the allegations of fact in the petition and rested their refusal to advertise the question of granting or not granting licenses for the sale of liquor and to place such question upon the ballots at the approaching election as set out and stated in the petition upon the ground that the Act of 1896, chapter 195, is unconstitutional and void ; that if not unconstitutional it is in conflict with the provisions of chapter 202 of the Act of 1896 from which the appellants, as Supervisors of Elections derived all of their powers and authority over elections in said county; and that by section 47 of the said chapter 202 of the Act 1896, "all questions of local concern which are to be submitted for approval to the vote of the people" of a county must be certified to the Board of Supervisors of Elections by the County Commissioners of the county not less than thirty days before the election at which such question is to be submitted ; and that the question of granting or not granting any license for the sale of intoxicating liquors in the 9th election district of Wicomico County had not been so certified thirty days before the election as a question to be submitted for approval.   The appellees demurred to the answer ; and upon hearing the Court on the same day the answer was filed, October 24th, 1902, ordered the writ of *mandamus* to issue as prayed.   From such order this appeal was taken.

In the view we take of this case the ground of defense first set up in the answer of the appellants against the application for *mandamus* is sufficient to dispose of the case upon this appeal and it will be unnecessary to consider any other.   We think it advisable to dispose of it upon this ground because future litigation under the law in question will thus be avoided. The Legislature has seen fit to prescribe as a condition for the law (chap. 195 of the Act of 1896), being called into existence and put into operative effect, that an application shall be made to the Circuit Court for Wicomico County for a sub-

mission of the question of the adoption of the law, to the voters of the county or of a town or election district of the county as the case may be ; that the said Court shall order the submission of such question to a vote upon conditions prescribed ; and that upon the vote being had a majority of the votes of the locality to be effected, according to the submission, shall appear to be in favor of putting the law into operation.    The existence of the law with operative effect is made to depend upon the observance of these prescribed proceedings, the initial step in which is the application to, and the order from, the Circuit Court for the submission of the question, whether the law shall be put into effect, to the voters within the territorial limits to be affected.

The question raised is as to the validity of this legislation. The inquiry as to this is whether it is within the constitutional power of the Legislature to impose upon the judiciary, or invest them with, a function of this character, and whether the judiciary in the attempt to discharge such a function are not acting without constitutional warrant.    In making this inquiry we are not dealing with any question of expediency or policy; nor can we have regard to the question whether, in the particular instance, the Legislature has prescribed a course of proceeding best adapted to the accomplishment of a laudable object.    The public policy involved in the inquiry is determined and fixed in our Bill of Rights and the Constitution— the fundamental law ; and we are limited to the question of constitutional power.    As was said in the case of *Thomas* v. *Owens*, 4 Md. at page 225, "under our system of government its powers are wisely distributed to different departments ; each and all are subordinate to the Constitution, which creates and defines their limits ; whatever it commands is the supreme and uncontrollable law of the land."    This distribution of the powers of our State government was declared in our original Bill of Rights accompanying the Constitution of 1776 in this language, "That the Legislative, Executive and Judicial powers of government ought to be forever separate and distinct from each other."    Art. 6, Bill of Rights, 1776.

There are a number of decisions of this Court having reference to this Article of the Bill of Rights sanctioning its wisdom and enforcing practically the principle involved in the declaration. Only those which may have more immediate reference to the case at bar need be referred to. Among those which arose under the Constitution of 1776 is that of *The State* v. *Chase*, 5 Har. & John. 297, in which JUDGE BUCHANAN, in the course of his opinion, says : "New judicial duties may often be unnecessarily imposed, and services, not of a judicial nature, may sometimes be required. In the latter case, a Judge is under no legal obligation to perform them" which was to say that the opinion of the Court was that duties, "not of a judicial nature," could not legally and constitutionally be imposed upon the Courts or the Judges.

In the subsequent Constitutions adopted in this State in 1851, 1864 and 1867 the declaration, which has been quoted from the Bill of Rights of 1776, has been incorporated, and emphasized by adding thereto this language of exclusion "and no person exercising the functions of one of the departments shall assume or discharge the duties of any other." Art. 6, Bill of Rights, Const. 1851, Art. 8 in each of the Constitutions of 1864 and 1867. And in each of these subsequent constitutions there is this further declaration "no Judge shall hold any other office, civil or military, or political trust or employment of any kind whatsoever under the Constitution and laws of this State or of the United States or any of them." Art. 30, Bill of Rights, 1851, Art. 33 in each of the Constitutions of 1864 and 1867.

The force of the opinion of the Court speaking through JUDGE BUCHANAN in case of *State* v. *Chase, supra,* is enhanced therefore not only by the subsequent more emphatic declarations of the fundamental law in reference to the separation of the powers of government but by the express inhibition against the exercise by a Judge of any other "political trust or employment whatsoever." It would seem thus to be made evident in our fundamental law that the policy and intent of that law is that the Courts and Judges provided for in our system

shall, not only, not be required but shall not be permitted to exercise any power or to perform any trust or to assume any duty not pertaining to or connected with the administering of the judicial function ; and that the exercise of any power or trust or the assumption of any public duty other than such as pertain to the exercise of the judicial function is not only without constitutional warrant but against the constitutional mandate in respect to the powers they are to exercise and the character of duties they are to discharge. In accord with this are recent decisions of this Court. In the case of *Robey* v. *Prince George's County*, 92 Md. 150, a statute which required the Judges of the Circuit Court to approve the accounts of certain county officers before payment of the same by the County Commissioners was held unconstitutional as to this requirement because it imposed on the Judges a non-judicial duty. For the same reason in the case of *Beasly* v. *Ridout*, 94 Md. 641, a staute that imposed upon the Judges of the Circuit Court the duty of appointing members of a Board of Visitors for the county jail of Anne Arundel County was pronounced unconstitutional.

Therefore to test the constitutionality of the law here in question in respect to the duty assigned by it to the Circuit Court we have only to inquire whether the duty so assigned to the Court is a judicial duty. It is quite unnecessary to undertake to define here the essential qualities of a judicial act or to prescribe the precise limits to be observed by the legislative branch of the government in assigning duties to the Judiciary. Such attempt could, in its results, only be misleading and confusing. It would not be practicable to lay down a rule for all cases; and it would be inappropriate that the Courts should undertake to do this. It is only necessary in this case to say that counting the names upon a petition, ascertaining whether the names appended thereto are those of voters at the last election for Governor, and ordering an election, is not a judicial function, is a proposition that would seem to be too plain to need argument to enforce it. The order, which by the statute here under consideration, the

Court is required to pass, is not to be the result of any judicial inquiry. It is not to be passed in the course, of, or in connection with, any judicial proceeding. It is not to be made as preparatory or preliminary to the bringing of any matter within the judicial cognizance; nor as a means necessary or appropriate to aid, in any way, the efficient and appropriate exercise of the judicial function. In short, there is no view in which the duty to pass the order, required by the statute, presents itself as a judicial act. In assuming the duty to pass the order in question therefore the Court assumes a political trust or duty distinct from its constitutional duty as a Court. Again, if the Court can be required to take one step in proceeding to hold an election for the object indicated in the statute in question; or for such other purpose as the Legislature, within its powers, may see fit to order an election, why may not all the duties in connection with the holding of such election be devolved upon the Courts? Why may they not be required to name time and place of holding such election, appoint the judges and clerks of election, canvass the votes and declare and certify results? The initial step in holding such elections would be no more judicial in its character than all the other necessary proceedings therein. It is not reasonable to impute to the fundamental law, in view of the declarations therein heretofore noticed, an intention to make the Courts subject to have devolved upon them duties so distinct from those pertaining to the exercise of the judicial function; and which could be imposed to such an extent as to seriously interfere with the efficient discharge of the duties of the judicial office. This being so, the provision of the Act of 1896, ch. 195, which requires of the Circuit Court for Wicomico County the duty of ordering elections as therein prescribed is repugnant to the Constitution and Bill of Rights and therefore void. As these elections, by the terms of the Act, must depend upon the orders from the Circuit Court the Act must fail.

No reference has been made to authorities or precedents in other States among which there is more or less conflict as to

the questions herein considered.    It is sufficient that the views expressed and the conclusious reached seem to be the logical and inevitable consequence of the principles embodied in our organic law; and of our decisions expounding them.    As authorities however maintaining similar views in analogous cases we may refer to *Dickey* v. *Hurlbut,* ·5 Cal. 343, and the case of *Supervisors of Election,* 114 Mass. 249.

As a result of our views we must reverse the order of the Circuit Court for Wicomico County from which the appeal in this case was taken.

> *Order reversed with costs to the appellants.*

(Decided April 15th, 1903.)