## CLARENCE W. MILES v. PUBLIC SERVICE COMMISSION OF MARYLAND, ET AL.

*Public Service Company—Valuation of Property—As Basis for Rates—Easements.*

In making a valuation of the property of the United Railways and Electric Company of Baltimore, for the purpose of fixing a rate base, it is improper to value its easements in the streets and highways with reference to the use to which its franchise permits them to be put, since the result of so doing would be to make the rate, which controls the amount of the earnings, depend on a value which is determined by the earnings.

pp. 342-346

Such value as is attributable to the property of a public service corporation by reason of its earnings should not be included in forming a base upon which a reasonable and fair return should be secured.                          p. 343

The fact that the taxing authorities have determined upon a certain valuation of the easements of a street railway company as a basis for the payment of taxes, is not controlling upon the Public Service Commission in fixing a valuation for rate making purposes.                          pp. 342, 347

*Decided July 8th, 1926.*

Appeal from the Circuit Court of Baltimore City (FRANK, J.).

Bill by Clarence W. Miles to review an order of the Public Service Commission of Maryland determining the value of the properties of the United Railways & Electric Company of Baltimore. From a decree confirming such order, the plaintiff appeals. Remanded without affirmance or reversal.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Clarence W. Miles* and *Thomas J· Tingley,* with whom was *Jackson R. Collins* on the brief, for the appellant.

*Thomas H. Robinson,* with whom was *John Hubner Rice,* on the brief, for the Public Service Commission, appellee.

*Edwin G. Baetjer* and *Joseph C. France,* for the United Railways & Electric Company, appellee.

DIGGES, J., delivered the opinion of the Court.

By order passed on the 30th day of December, 1912, the Public Service Commission of Maryland, under the authority contained in section 30 of the Public Service Commission Act, now codified as section 385 of article 23 of the Code of Public General Laws, 1924, instituted proceedings to determine the value of the properties of the United Railways & Electric Company of Baltimore, a corporation. For this purpose the Public Service Commission began hearings in May, 1925, which hearings, and the proceedings incident thereto, including argument of counsel for the respective parties, culminated in an opinion and order of the commission dated March 9, 1926. By this order the commission determined that the fair value for rate making purposes of the property of the railways company, as of December 31st, 1923, was $77,000,000. Included in this valuation was the item of easements, at the sum of $7,000,000. Objection was made by the appellant to the allowance of this item, and from the order of the Public Service Commission an appeal was taken to the Circuit Court of Baltimore City, the basis of this appeal being the contention by the appellant that these easements in the streets and highways of Baltimore City were not property which should be included in a valuation of the railways company's property in forming a rate-making base, and that the inclusion of the value of the easements in the rate base was unreasonable and unlawful. Upon a hearing of the case in the Circuit Court of Baltimore City, the chancellor passed a decree confirming the order of the Public Service Commission passed on the 9th day of March, 1926, and held

that said order was neither unlawful nor unreasonable. The case is now here to be considered on appeal from that decree.

The authority, power, duties and functions of the Public Service Commission are set forth in article 23 of the Code of 1924, section 346 to 418 inclusive, having been originally enacted by chapter 180 of the Acts of 1910·

It can be generally stated that the purpose of the Legislature in enacting the Public Service Commission statute was to provide for the creation of a commission with the power and duty of supervision and control over the corporations and individuals engaged in the operation of public utilities within the state. The commission has the power and authority to require safe and adequate service to the public and to fix such rates as, on the one hand, will be reasonable to the user of the utility and commensurate with the service rendered, and, on the other hand, will produce a fair and reasonable return upon the property or capital invested in the public service enterprise. Section 30 of the original act, now section 385 of article 23 of the Code, provides: "The Commission shall, whenever it may deem it desirable to do so, investigate and ascertain the fair value of property of any corporation subject to the provisions of this sub-title and used by it for the convenience of the public." It is evident that the most important purpose in ascertaining the fair value of a public service corporation's property is to enable the commission to determine the rate to be allowed, in order that the public may receive adequate and safe service at a reasonable price, and at the same time, that the rate be not fixed so low as to constitute a confiscation of its property under the provisions of the Fourteenth Amendment to the Federal Constitution, but will produce a reasonable and proper return upon the capital invested.

The present case presents the single question of whether the Public Service Commission, in ascertaining the fair value of the property of the railways company for rate-making purposes, should include, as property of the railways company, easements in the streets and highways of Baltimore City at their fair and just value. The appellant contends that the

value of these easements is so dependent upon the earnings of the corporation, and the earnings being dependent upon the rate fixed by the Commission, that therefore it is illegal and unreasonable to include the value of these easements in the sum upon which the corporation is entitled to a fair and reasonable return.

The case of *Consolidated Gas Co. v. Baltimore City,* 101 Md. 541, definitely settles that the easement which a public service corporation, such as the Consolidated Gas Company or the United Railways & Electric Company, has in the streets of Baltimore City, is property, that it is an interest or estate in land; but it does not determine that the value of this easement or interest in land, for taxation purposes, is to be determined by its value as land, but must be determined by its use in conjunction with the franchise of the corporation, that is to say, the corporation's right to conduct the business in which it is engaged. In other words, this Court, in effect, said: "Ascertain to what extent the use of this easement in the conduct of the corporation's business is responsible for its earnings, and then base the valuation for taxation purposes upon the earnings thus ascertained." In the above cited case this Court said: "The distinction is clear between the franchise, as such, and the property acquired for the use of the franchise. The naked, unused, slumbering franchise is property, but it is property concerning the assessment of which in that condition for purposes of taxation the statutes do not make provision, otherwise than by including it as an element which enhances the value of the shares of the capital stock. But when the franchise is brought into activity and is availed of to accomplish the ends it was designed to effect, the property acquired under it becomes amenable to the tax laws apart from the tax on the stock, and its value as an easement, if an easement it be, may be largely augmented by the use to which the franchise enables that property or easement to be put."

The Court then quotes with approval the language used in *People v. Tax Commissioners,* 174 N. Y. 441, as follows: "They (tangible chattels in public highways) have no assessment value worthy of notice except through the actual and

constant use made of them as incidental to the special franchise. The value of either resides in the union of both and can be practically ascertained only by treating them as a unit. Unless assessed together, both can not be adequately assessed. * * * We regard the tangible property as an inseparable part of the special franchises mentioned in the statute, constituting with them a new entity which as a going concern can neither be assessed nor sold to advantage except as one thing, single and entire." This Court then continues: "We cite this to show, if precedent be needed to support such a self-evident proposition, that the use to which a franchise permits an easement to be put is an essential element to be considered in placing a valuation on that easement for purposes of taxation."

In the case of *Appeal Tax Court v. Union R. Co.,* 50 Md. 274, the railroad company asked that the assessments of the road-bed in the tunnels be stricken from the property valued to it; the court below granted the relief asked, and the Appeal Tax Court appealed. The specific contention was made in the argument in this Court, as to the tracks located in the tunnel and on the streets, that the railroad company did not own the property, that is, the road-bed, and ought not to be assessed for it as though it was seised of it; it had only the right to make use of the streets and the soil beneath the streets, and to receive the tolls authorized by its charter. In disposing of that contention it was said: "We do not concur in the position of the appellee, that it should only be assessed with the superstructures on the bed of the road, irrespective of the road-bed itself, or any right or interest therein, because the road occupies a tunnel under a public street, or runs along the highways of the city. The appellee has an easement in the way occupied by its road, and whether that easement be under or over the public street, it is an element of value to the road, and as such should be included in the valuation of the road itself. But few of the railroad companies of the country have anything more than a mere easement in the ways occupied by their roads, and we are not aware that it has ever been held that because the company did

not own the freehold estate in the bed of the road, that nothing but the mere superstructures thereon could be assessed to the company. The rule would seem to be clearly otherwise, and that an easement enjoyed in the bed of a public street may be assessed and taxed as real estate."

While it is true that the authorities just cited determine that the right of the appellee here in the streets of Baltimore City is an easement subject to taxation, and that the use to which a franchise permits an easement to be put is an essential element to be considered in placing a valuation on that easement for the purpose of taxation, it does not determine that these easements should be valued in the same manner for the purpose of fixing a rate base upon which the public service corporation is entitled to a fair and reasonable return. Neither is it true that because this character of property is designated as an easement or interest in land, and as such is entitled to be accorded some value, it should be given the same value for fixing a rate base as that given it for taxation purposes. On the contrary, there is a controlling reason why the two valuations should not be identical. In the valuation for rate making purposes, property of the public service corporation, the value of which depends upon the earnings of the corporation, should not be included, for the reason that the earnings upon which the value of the property depends are largely controlled and determined by the rate which is allowed to be charged for the service rendered.

Under the statute it is incumbent upon the commission to ascertain the value of the property in order that such a rate may be fixed as will result in a reasonable return upon the property of the utility corporation used for the convenience of the public. If such value as results from earnings be allowed in the rate base, it is impossible to escape the following reasoning: The value of the property, as ascertained by the commission, would determine the rate which the commission authorized the corporation to charge for its service. The rate authorized controls the amount of earnings. The earnings in turn determine and fix the value of the property. Therefore the rate determines the value, and we have a

conclusion that the value determines the rate, and the rate determines the value; and if the value of the property depends upon the rate, which in turn depends upon the value of the property, the rate would depend upon itself, resulting in an apparent absurdity. It is therefore clear that such value as is attributable to the property of a public service corporation by reason of its earnings should not be included in forming a base upon which a reasonable and fair return should be secured. There is nothing in the case of *Consolidated Gas Co. v. Baltimore, supra,* inconsistent with this conclusion. In that case the Court was considering whether or not these easements were taxable, and what elements should be taken into consideration in determining their value for that purpose; and the effect of that decision must be confined to the subject then under discussion.

It is strongly contended by the appellee (railways company) that the sum of $7,000,000 at which these easements were valued by the commission was arrived at on a strictly land value basis. It may be that the railways company's officials did arrive at their valuation by assessing these easements as interest in land, but it is obvious that the commission did no such thing. In the commission's opinion, which is made a part of their order in this case, they set out at length and in detail the railways company's basis for arriving at the easement value, which was an appraisement of the easement as interest in land. They expressly reject the method of valuation contended for by the railways company, and then state: "The commission feels that a method, fair alike to the people and the company, is to be found in the plan adopted by the commission in 1913 in valuing the easements of the gas company. In that case it fixed as the easement value, the value at which the easements were taxed." It will thus be seen that the commission did not value these easements upon an interest in land basis, but adopted the valuation of the assessment for tax purposes. This valuation for tax purposes, in compliance with the plain mandate of this Court, must take into consideration in valuing the easement the use

to which the franchise permits the easement to be put; and the value of this use, and therefore the easment itself, must necessarily depend upon the earnings of the company as a whole.

We are of the opinion that it is logically unsound to include in the rate base a factor the value of which varies or changes with the rate. It is to be borne in mind that the intent and purpose of the Public Service Commission Law was to create a commission entrusted with the power and authority, and obligated with the duty, of regulating the public service corporations of the state, so that the users of the utility would be insured of safe and adequate service at a reasonable price, and the public utility company be allowed to charge such rates as will produce a fair and reasonable return on the investment employed in the public service; or, as was said by the Supreme Court in *San Diego Land & Town Co. v. National City,* 174 U. S. 739: "What the company is entitled to demand in order that it may have just compensation is a fair return upon the reasonable value of the property at the time it is being used for the public." It is such a valuation which section 385 of article 23 of the Code of 1924 authorizes the Public Service Commission to make; the language being: "The commission shall, whenever it may deem it desirable to do so, investigate and ascertain the fair value of property of any corporation subject to the provisions of this sub-title and used by it for the convenience of the public. * * * Such valuation shall show the value of the property of every such corporation as a whole and the value of its property in each of the several counties and municipalities within the State of Maryland."

The very purpose of authorizing the commission to ascertain the value of the property of the various public service corporations is to enable it to fix the rates which the corporation is permitted to charge the public for the service rendered. This valuation by the commisison is not for the purpose of assessing the property for taxation; that function belonging to other officials of the state and municipal govern-

ment.  Neither is it for the purpose of fixing the value for
condemnation purposes.  If the commission ascertained the
value of the property of the corporation for rate making
purposes, it could not be successfully contended that the
taxing authorities of the state would be bound to accept that
valuation for taxing purposes.  Neither would a jury in
condemnation proceedings be bound by such valuation of the
commission.  It follows, therefore, with equal force that
because the taxing authorities have determined upon a certain
valuation of these easements as a basis for the payment of
taxes, this base would not be controlling upon the commission.

We are of the opinion, therefore, that the duty of the
commission imposed by the statute is to fix the fair value of
the property of the corporation used for the convenience of
the public, and that, in fixing the value of the easements for
the purpose of a rate base, they are confined to such sum as
fairly represents their value as an interest in land, and can-
not add to that any value which might be affected by the
rate which the corporation may be allowed to charge, or
such value as is dependent upon the use to which the fran-
chise of the corporation permits the easement to be put.

It is contended by the appellees that the language employed
by this Court in *Havre de Grace Bridge Co. v. Public Service
Commission,* 132 Md., at page 26, is in conflict with the view
just expressed, but we do not so interpret that decision.
By the language employed the Court meant that it would be
absurd to hold that the Public Service Commission had
authority to fix a different valuation for different purposes;
but that when the commission ascertained the fair value of
the property of the corporation, that ascertainment was con-
clusive for every purpose for which the commission could
make a valuation.  It could not be properly interpreted to
mean that if the commission ascertained the value for rate
making purposes, this valuation was conclusive and binding
upon all other public officials of the state whose duty it might
be to make a valuation for a totally different purpose.

It is undoubtedly true that the sale or exchange value of
the easement and the franchise is almost invariably deter-

mined by the union of both, or by both in combination. Value, for such a purpose, is usually based upon the capitalized earnings realized from the exercise or use of the easement and franchise in combination. The easement is an interest in land, but it is only when this interest in land is used in combination with all of the other elements which go to make up an operated street railway system that the easements have anything more than a real estate value. It is apparent that the unused easement may have a large potential value, but, until put into use in combination with other rights or property, it can have no other different or additional value than it possesses as real estate or an interest therein. It is the use to which the easement, in combination with the franchise, is put, that gives it value for exchange or sale purposes, in condemnation proceedings, and for the purpose of taxation. But it is clear that this potential value, which must in large measure depend upon the earnings as determined by the rate, should not be included in the rate base, for the reason hereinbefore stated, and as expressed by the learned chancellor below: "The greater the earnings, the larger the value of the easement; the greater the value of the easement, the larger the fair return that must be allowed upon said value."

From what we have said it will be seen that we are in accord with the chancellor in his statement: "The objection to valuing an easement in a rate base in terms of earnings is self-evident." He further states: "The valuation of $7,000,-000 made by the commission which is now the subject of attack, was reached without reference to the earning capacity of the easement so valued."

With this finding we are unable to agree. An examination of the opinion and order of the commission, which fixed the value of these easements at $7,000,000, shows that it did not arrive at this amount by an assessment of them as an interest in land, but on the contrary, adopted as their basis the assessment for tax purposes which had theretofore been put upon those portions of the railways company's tracks which were

not subject to the park tax. The easements in the New and Old Annexes which were not subject to the park tax were valued for tax purposes by an agreement between the railways company and the Appeal Tax Court of Baltimore, as a result of the opinions of this Court in the tax cases, which unequivocally determined that these easements were an interest in real estate; and further, with equal definiteness, determined that the use to which the franchise permitted the easement to be put was an essential element to be considered in placing a valuation on that easement for the purpose of taxation.

It is, therefore, clear that if by this agreement the value per mile of these easements, for taxation purposes, was fixed in conformity with the decisions of this Court in the tax cases, there is reflected in such tax valuation such value as is attributable to the easement because of the purpose to which the franchise permitted the easement to be put. The conclusion is inescapable that the element of earnings was considered in fixing the tax assessment at $12,500 a mile in the New Annex and $17,692 a mile in the Old Annex; and as the commission in this case used these tax values as the sole basis and controlling item in fixing the value of the easements at $7,000,000, as a part of the rate base, it follows that the commission's valuation of $7,000,000 was not and could not have been reached without reference to the earning capacity of the easements so valued.

From what has been said, it follows that in our opinion:

(1) These easements are an interest in real estate, and whatever value they have as an interest in real estate the company is entitled to have included by the commission in making up the rate base.

(2) But any value attributable to these easements which is dependent upon the earnings of the company should not be included in the rate base.

(3) The commission having based their valuation upon the assessment made for tax purposes, and the tax assessment necessarily including value resulting from earnings, the method by which the commission arrived at the valuation of

$7,000,000 was not in accordance with law. But because the record does not enable us to determine whether that valuation would be unreasonable if made according to the lawful method, the case will be remanded, without affirmance or reversal, in order that the valuation may be made in conformity with the method expressed by this opinion.

> *Case remanded, without affirmance or reversal of the decree, for further proceedings in accordance with the opinion of this Court, the costs to be paid by the appellee.*

ADKINS and PARKE, JJ., dissent.