ELDRED A. CROMWELL *v.* ROBERT JACKSON,
CLERK OF CIRCUIT COURT FOR ALLEGANY COUNTY.

[No. 76, October Term, 1946.]

10

Decided March 12, 1947.

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Edward J. Ryan* and *F. Neal Parke* for the appellant.

*William C. Walsh* and *D. Lindley Sloan,* with whom were *Morgan C. Harris, William Curran, Attorney General, Hall Hammond, Deputy Attorney General,* and *Joseph D. Busher, Assistant Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellant, Eldred A. Cromwell, filed on April 13, 1946, in the Circuit Court for Allegany County a peti-

tion alleging among other things that he presented to Robert Jackson, Clerk of the Circuit Court for Allegany County, an application for a saloon license under the Act of 1894, Chapter 140, of the General Assembly of Maryland and the amendments thereto. Therein he stated that he possessed all the qualifications therefor and would abide by all the provisions thereof. He stated that the said Clerk of said Court refused to accept this application and file it, and that the said Clerk endorsed at the foot of the application, "refused to accept because no law covering such application."

He further alleged that the refusal of the said Clerk was not because of any defect in the form or substance of the application, but because the Clerk contended that Chapter 140 of the Acts of 1894 aforesaid was repealed and re-enacted by the General Assembly at its Special Session of 1933 by Chapter 5 (V) of the Acts of that session, which now regulates the sale of spirituous or intoxicating liquors in Allegany County. He prayed that a writ of mandamus issue commanding the said Robert Jackson to file the aforesaid application for the reason that Chapter 5 (V) of the Acts of the Special Session of 1933 aforesaid is unconstitutional and void because it attempted to confer substantial and material administrative and non-judicial functions upon the Circuit Court for Allegany County, and the Judges thereof, in explicit and direct violation of the express prohibition and denial of the provisions of the Constitution of the State of Maryland.

He further asked that the Court by its declaratory judgment construe, determine, and declare whether or not Chapter 5 of the Acts of the Special Session of 1933 "is a valid and operative statute in effect in Allegany County in the licensing, regulation and control of the manufacture or sale of alcoholic beverages within Allegany County; and if not, whether the Acts of 1894, Chapter 140, and the Acts amendatory thereof are in force and in effect in said Allegany County." He also asked for other and further relief.

An answer to this petition was filed by Robert Jackson, Clerk of the Circuit Court for Allegany County, appellee, which in effect admitted that the issue in this case is the constitutionality of Chapter 5, aforesaid, which the appellee maintains is constitutional. The answer set out certain facts which were claimed to sustain the constitutionality of that Act and to show that the duties imposed thereby upon the Judges of the Circuit Court for Allegany County were not administrative and non-judicial, but judicial in character. The answer further alleged that even if Chapter 5, aforesaid, is held unconstitutional, that Chapter 140 of the Acts of 1894 and the amendments thereto have been repealed, further that if Chapter 5 is invalid Allegany County will be left without any law authorizing the issuance of licenses for the sale of intoxicating beverages. An answer was also filed by the Attorney General of Maryland, adopting in its entirety the answer of Robert Jackson.

To this answer of Robert Jackson, the appellant filed a demurrer to the effect that the answer was bad in substance, insufficient in law, and did not state facts sufficient to constitute a defense. The trial judge, holding that the demurrer mounted up to the first substantial error in the pleadings, filed an order on August 20, 1946, dismissing the petition for the Writ of Mandamus and decreeing that Chapter 5 of the Acts of the Special Session of the General Assembly of Maryland of 1933 is a constitutional and valid enactment of the General Assembly entitled to full legal force and effect. The plaintiff was ordered to pay the costs. From that order and decree of August 20, 1946, the appellant appeals.

Before the Constitution of 1851, by The Declaration of Rights, in the Constitution of 1776, Section 6 provided: "That the legislative, executive and judicial powers of government, ought to be forever separate and distinct from each other." The case of *State v. Chase,* June, 1821, 5 Har. & J. 297, involved the duties of the then Chief Judge of the third judicial district of this State. This Court there held that the Legislature could constitutionally impose upon the judges any new and judicial

duties which may in its judgment be deemed necessary to the administration of justice. It was further held at page 304 of 5 Har. & J.: "New judicial duties may often be unnecessarily imposed, and services, not of a judicial nature may sometimes be required. In the latter case, a judge is under no legal obligation to perform them." In the case of *Wright v. Wright's Lessee,* 2 Md. 429, 56 Am. Dec. 723, decided December, 1852, this Court pointed out in reference to the sixth section of the Bill of Rights hereinbefore quoted, that the evident purpose was to parcel out and separate the powers of government; to confide particular classes of them to particular branches of the supreme authority, such of them as are judicial in their character to the judiciary, such as are legislative to the Legislature, and such as are executive in their nature to the executive. It was said in that case at page 452 of 2 Md.: "Within the particular limits assigned to each, they are supreme and uncontrollable."

By the Constitution of 1851, adopted May 16, 1851, and the present Constitution of 1867, section six, *supra,* of the Bill of Rights was further restricted as follows: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; *and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."* Declaration of Rights, 1851, Article 6; 1867, Article 8. (Italics supplied here.)

The primary question for our decision is whether the legislative branch of the state government by the enactment of Chapter 5 (V) of the Special Session of 1933 imposed non-judicial duties upon the judiciary. If by that Act the duties imposed upon the judiciary are non-judicial, under the plain words of the Constitution of Maryland the Act is unconstitutional and void.

Section 301 of that Act sets forth the license fees and under sub-sections states what is permitted under the particular license granted. Section 301A provides that the Clerk of the Court upon approval of the Court, shall have authority to grant special licenses at any *bona fide*

entertainment, held by any club, society, or association for a period not exceeding seven consecutive days. Section 301B provides that the Clerk of the Court, pending final action upon any application for any license applied for, without any notice or advertisement, shall approve a temporary license of certain classes, to any applicant therefor. This temporary license entitles the holder to operate for a period not exceeding sixty days and shall expire immediately upon the action of the Court in approving or refusing to approve the original application for a license. Section 304 requires the applicant to swear to every application for a license and specifies the information to be contained in the application.

For the purposes of this case it is necessary to quote Section 305 of the Act, here attacked, in full. It provides:

"Section 305. There shall be annexed to said petition, a petition signed by at least six reputable citizens or voters or property holders who have not signed any other petition for license granted under this Act living or owning property in the vicinity of the place for which license is applied, stating the full name, residence, or property owned of each person and certifying that they have been acquainted with the petitioner or petitioners for more than one year preceding said application for license, and that they have good reason to believe and do believe that all the statements contained in said petition are true, and they, therefore, pray that said petition be granted and that the license be issued as prayed for. If after the notice provided for in this Act there shall be no remonstrances filed with said Clerk against the issuing of the same, the Clerk shall certify such fact upon said application and immediately deliver the application to the Court, who shall forthwith pass an order setting a time when said Court shall sit for the purpose of examining and finally passing upon said application; and it shall be the duty of the Clerk to notify each of said applicants of the time set for said hearing and request that said applicant be personally present thereat to answer any and all such questions as the Court

may require of him touching upon said application. If within the period of fourteen days after the first publication of any license application a remonstrance shall be filed against any application for a license, the Clerk shall forthwith submit said application and remonstrance thereto to said Court, which shall fix a day as early as practicable for the hearing thereof. Said Court shall in its discretion direct said Clerk not to issue said license whenever in its opinion any petitioner or petitioners (whether a remonstrance shall have been filed or not) is or are an unfit person or persons to be granted such license or in the discretion of the Court when the place for which the license is applied for is not a proper one with reference to the public peace and general welfare of the neighborhood or to the character of its inhabitants, due regard being given to the number of said licenses issued for said neighborhood as well as all specific restrictions and conditions set forth in this Act, and provided further that the Court shall restrict the granting of the number of those licenses designated as 'light beer, beer, wine and liquor license,' classes A and· B, as described in Sub-section 5 of Section 301 of this Act, so that the number of both classes thereof, inclusive, shall not exceed more than one to every fifteen hundred persons residing in Allegany County as determined by the last United States census. If, after the hearing as herein provided, the Court shall determine that the license applied for shall be issued, then it shall direct the Clerk to issue the same; provided that no license under this Act shall be issued to any applicant therefor until the license fee shall have been paid and the bond herein provided for shall have been given, filed and approved by the Court or the Clerk thereof and all other provisions of this Act complied with. At the time of filing the application for said license, the applicant shall pay to the Clerk such sum of money as may be necessary to provide for the payment of the costs relating to the publication and notice."

In the case of *Robey v. County Com'rs of Prince George's County*, 92 Md. 150, 48 A. 48, a statute required the Judges of the Circuit Court to approve the accounts of certain officers before payment could be made by the County Commissioners. It was there held that although the auditing of accounts involved an inquiry and investigation, it was not a judicial function when imposed upon Judges. C. J. McSherry said (page 160 of 92 Md., page 50 of 48 A.): "It is not alone the mode in which a thing is done that determines the character of the thing. The legislature may inquire by evidence into the expediency of enacting a particular law, but the enactment of the law thereafter would be no less an exercise of legislative power because preceding the enactment a distinct judicial function had been exercised in deciding upon the propriety of enacting it. So a court, which has no legislative power, may, in the administration of justice, prescribe rules having the force of statutes, but adopted in virtue of its inherent judicial power. Though the auditing of an account involves an inquiry into the accuracy of the items which make up that account, and therefore requires an investigation as to whether the services charged for were actually rendered, this function is not a judicial function when imposed upon judges, and when it is to be performed by them in the *ex parte* method prescribed by the statute."

In *Baltimore City v. Bonaparte*, 93 Md. 156, 48 A. 735, property of the appellee was assessed for tax purposes. An appeal was taken by the owner to the Baltimore City Court as the City Charter provided that right. The assessement was reduced in the Baltimore City Court and from that action the appellant appealed here. It was here held that the valuation of property for the purposes of taxation was not a judicial function and it cannot be made a judicial function by being committed to the Judicial Department, although requiring the exercise of judgment in its performance.

In the case of *Beasley v. Ridout*, 94 Md. 641, 52 A. 61, an Act provided that the control and supervision of

the jail of Anne Arundel County and of the prisoners therein should be taken from the Sheriff and committed to a Board of Visitors who should appoint a warden with the same powers as the Sheriff. The Judges of the Circuit Court were to appoint three Visitors. It was pointed out therein that whether an Act of Assembly is a valid exercise of legislative power is a question not of expediency or policy but of power alone as determined by the Constitution. It was said at page 649 of 94 Md., at page 62 of 52 A.: "Questions of expediency or utility are matters for the *exclusive* decision of the *legislature,* and cannot be regarded by the judiciary in testing the power to pass laws." It was further there held that the provision of the Act that three of the Visitors be appointed by the Judges of the Fifth Judicial Circuit, converted the Court, for the purposes of that Act, into an appointing agency. It was said, at page 658 of 94 Md., at page 66 of 52 A.: "No argument is needed to show that the duty thus sought to be imposed is not judicial, and that in making these appointments the judges were not performing a judicial function." In speaking of appointments made by the judiciary this Court pointed out at page 660 of 94 Md., at page 66 of 52 A.: "Officers so appointed, when once inducted into power, are doubtless regarded as *de facto* officers, and their official acts upheld *pro bono publico."* The Court there quoted from the case of *Mayor, etc., of Baltimore v. State ex rel. Board of Police of City of Baltimore,* 15 Md. 376, at page 453, 74 Am. Dec. 572: "When the Court is satisfied that the legislature has exceeded its authority, we should no more falter in denouncing the act as void, than we should hesitate in deciding the most unimportant matter within our jurisdiction."

In *Board of Sup'rs of Election for Wicomico County v. Todd,* 97 Md. 247, 54 A. 963, 62 L. R. A. 809, 99 Am. St. Rep. 438, the Act in question imposed upon the Judges of the Circuit Court the duty to count the names upon a petition, to ascertain whether these names were those of voters at the last election for Governor, and if so

found, to issue an order to submit the question of granting or not granting licenses for the sale of liquors at the next general election. This Court decided that the Act was unconstitutional. Some of the language in the opinion in that case is so appropriate that we deem it advisable to quote from page 262 of 97 Md., page 964 of 54 A., as follows: "The question raised is as to the validity of this legislation. The inquiry as to this is whether it is within the constitutional power of the Legislature to impose upon the judiciary, or invest them with, a funtion of this character, and whether the judiciary, in the attempt to discharge such a function, are not acting without constitutional warrant. In making this inquiry we are not dealing with any question of expediency or policy; nor can we have regard to the question whether in the particular instance, the Legislature has prescribed a course of proceeding best adapted to the accomplishment of a laudable object. The public policy involved in the inquiry is determined and fixed in our Bill of Rights and the Constitution—the fundamental law—and we are limited to the question of constitutional power." The Court further said at pages 264 and 265 of 97 Md., page 965 of 54 A.: "Therefore, to test the constitutionality of the law here in question in respect to the duty assigned by it to the circuit court, we have only to inquire whether the duty so assigned to the court is a judicial duty. It is quite unnecessary to undertake to define here the essential qualities of a judicial act, or to prescribe the precise limits to be observed by the legislative branch of the government in assigning duties to the Judiciary. Such attempt could, in its results, only be misleading and confusing. It would not be practicable to lay down a rule for all cases, and it would be inappropriate that the courts should undertake to do this. It is only necessary in this case to say that counting the names upon a petition, ascertaining whether the names appended thereto are those of voters at the last election for Governor, and ordering an election is not a judicial function, is a proposition that would seem to be too plain

to need argument to enforce it. * * * In assuming the duty to pass the order in question, therefore, the court assumes a political trust or duty distinct from its constitutional duty as a court. * * * As these elections, by the terms of the act, must depend upon the orders from the circuit court, the act must fail."

In *Prince George's County Com'rs v. Mitchell*, 97 Md. 330, 55 A. 673, the Act provided that the Prince George's County Court House shall be "under the care, custody and control of the crier of the circuit court for said county, who shall be at said courthouse daily to see that it is properly cared for." The Court House was occupied not only by the Circuit Court but by the County Commissioners and other officials, and the building had been under the control of the Commissioners. The crier of the Circuit Court was appointed by the Judges under Constitution, Article 4, Section 9, which provides that: "The Judge or Judges of any Court may appoint such officers for their respective Courts as may be found necessary * * *." It was held in that case that the statute indirectly imposed upon the Judges of the Circuit Court the duty of appointing a custodian for the Court House and thereby violated Article 8 of the Bill of Rights because it required the Judges to discharge a non-judicial function.

In *Close v. Southern Maryland Agr. Ass'n*, 134 Md. 629, 108 A. 209, the Act in question provided that after an application was filed and certain notification given, the Circuit Court was given the power to issue licenses permitting betting, pool-selling and bookmaking upon the result of running races of horses, for a certain period of time. This Court in holding the Act unconstitutional because it conferred non-judicial duties on the judiciary pointed out that the Court and not the Clerk was to issue the license. The Court said at page 642 of 134 Md., page 214 of 108 A.: "If the petitioner complies with all of the requirements of the statute, what is there for the court to try? If it is a valid statute, what sort of cause would be sufficient to justify the

court in refusing a license? Surely the court, if acting judicially, cannot be governed by the individual views of the judges as to betting, or pool-selling or book-making on horse races. There is nothing in the statute to be determined, excepting the name of the applicant, the name of the grounds, a definite description of the place where such grounds are located, whether the certificate is signed by at least 25 respectable, qualified voters of the election district, and the number of days and months within which the license shall be operative, even if an order to show cause is intended to be passed. All those things can be done by the clerk of the court."

The Supreme Court of the United States in the case of *Ambrosini v. United States,* 187 U. S. 1, 23 S. Ct. 1, 47 L. Ed. 49, in reference to the "dramshop act" of Illinois providing for the giving of bonds by all applicants to whom licenses were granted to sell liquor in the City of Chicago, said at page 7 of 187 U. S., page 3 of 23 S. Ct., 47 L. Ed. 49: "The granting of the licenses was the exercise of a strictly governmental function, and the giving of the bonds was part of the same transaction."

The lower court relied strongly on the case of *McCrea v. Roberts,* 89 Md. 238, 43 A. 39, 44 L. R. A. 485, and the appellee contends that that case is controlling here. The Act, there attacked, was held to be valid. In that case this Court passed upon the constitutionality of an Act regulating the sale of liquor in Carroll County. According to the opinion in that case that Act required the applicant to file in writing an application with the Clerk of the Circuit Court. It was necessary to have attached thereto a certificate signed by at least nine reputable freeholders, *bona fide* residents of the neighborhood in which the appellant proposed to conduct the business, stating among other things that they believed the applicant to be a proper person to have the privilege of selling spirituous or fermented liquors and he accordingly recommended the issuance of the license applied for. The Act further provided that if any person filed a written protest against the granting of the license the Clerk should

present the application and certificate and the objection to a Judge of the Circuit Court for the county who should proceed to hear and determine whether the license should be issued. In that case an objection was filed stating two reasons why the license should not be issued: *First.* Because the certificate to the application was not signed by nine reputable freeholders, *bona fide* residents of the neighborhood in which the applicant proposed to conduct the business. *Second.* Because the application was not certified to by persons appearing to be sufficiently acquainted with the applicant to know his character. It was urged in that case that the Act was unconstitutional because the issuing of licenses to sell liquor is a purely executive or administrative function, and to impose such a duty upon a Judge required him to perform a non-judicial duty contrary to the constitutional provision requiring the legislative, executive, and judicial powers to be kept separate and distinct. This Court said in that case at page 252 of 89 Md., page 41 of 43 A.: "When an objection is filed to an application, the clerk is required to submit the whole matter to a judge of the court. It then becomes necessary for him to determine whether the prescribed conditions have been fulfilled or not. This question may be one of fact or of law, or a mixed question of fact and of law. In deciding it, the judge hears the evidence, and is bound to make his decision according to the law and the evidence. * * * It was then necessary to determine whether the signers of the certificate were freeholders or not; whether they were reputable or otherwise; whether they were residents of the neighborhood, and what was to be considered the neighborhood. It is manifest that these are questions of fact and law, upon which the judge was required to exercise his judgment after hearing the evidence." Under the Allegany County statute the Court is required to pass upon many matters not required by the Carroll County statute. These additional matters will be later pointed out herein. For this reason the case of *McCrea v. Roberts, supra,* is not controlling here.

It is argued that because under the provisions of the state-wide Act, Article 2B, appeals are given under Sections 63, 63A, 63B (1943) Supplement, to the Circuit Courts of various counties, that if the Courts can pass upon the granting or refusal of liquor licenses on appeal, then granting or refusal of the liquor license in the first instance is a judicial function. By these sections the action of the local board is presumed to be to the best interest of the public. The burden of proof is on the appellant to show that the decision, was arbitrary, not honestly exercised, procured by fraud, and beyond the powers of the board. Many other limitations are placed upon the Courts on appeal. It is evident that the liquor license board determines in the first instance the non-judicial matters, and the Court on appeal passes on whether the license board has acted fairly, honestly, and not in an arbitrary manner. The license board is the appointing agency and decides on the wisdom of granting the license and whether it is expedient to grant or refuse it. Whether or not an appeal is given by statute, where an administrative board acts in an arbitrary, fraudulent or collusive manner, and the parties are denied a hearing or consideration of essential facts, an appeal is allowed to the Courts. *Federico v. Bratten*, 181 Md. 507, 509, 30 A. 2d 776.

As pointed out in *Mayor and City Council of Baltimore v. Biermann*, 187 Md. 514, 50 A. 2d 804, the scope of judicial review of quasi-legislative action is different, and in some respects more limited, than the scope of review of quasi-judicial action. The mere fact that quasi-legislative, or even legislative, action is reviewable to some extent and under some circumstances, has no bearing upon the issue before us. We must examine the Act to determine the essential nature of the power conferred.

In the case of *Appeal of Norwalk St. Ry. Co.*, 69 Conn. 576, 37 A. 1080, 38 A. 708, 39 L. R. A. 794, there was a provision in a Connecticut statute which said that a street railway could apply to the municipal authorities of a town to approve a proposed plan for the location of

its railroad in such town. If they took no action within sixty days, then the railway could apply to a court or a judge thereof. The Court discussed a great many previous cases as well as the Constitution of Connecticut, and held that the power thus imposed on the court, although it was called an appeal, was really nothing more than the imposition of legislative duties. It said at page 599 of 69 Conn., at page 1087 of 37 A.: "The meaning of the act of 1893, relating to street railways, is uncertain in several particulars; but there can be no doubt that it confers on municipal authorities, in addition to certain executive powers, the power of establishing regulations and conditions (within the limitations prescribed) which shall control all the street railways in the state, in the location, construction, and operation of railways. There can be no doubt that making such regulations is essentially and distinctively a legislative function. It is also certain that the judicial power does not include the exercise of such a legislative function, and that the duty of making such regulations cannot be imposed upon the superior court, because it involves the exercise of legislative power by the court, and because a power in the legislature to impose such duties is inconsistent with the existence of an independent and separate judicial department of government." This case was approved in the late case of *DeMond v. Liquor Control Commission,* 129 Conn. 642, 30 A. 2d 547, where the court had before it an appeal from the Liquor Control Commission. On such appeal the Supreme Court of Connecticut held that there was not transferred to the court the jurisdiction of the county commission to hear purely administrative questions. See also *Appeal of Bridgeport, etc., Co.,* 86 Conn. 378, 85 A. 580. These cases illustrate the difference between purely administrative action in granting a license, and the hearing, by the court, where there is a dispute in a case between parties, such as there was in the McCrea case.

As Mr. Justice Cardozo said in *Highland Farms Dairy v. Agnew,* 300 U. S. 608, 612, 57 S. Ct. 549, 551, 81 L.

Ed. 835: "How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself." The Supreme Court, in construing the separate powers conferred on the three departments of the Federal Government, which makes the doctrine of separation of powers applicable, has gone very far. In *Federal Radio Comm. v. General Elec. Co.*, 281 U. S. 464, 469, 50 S. Ct. 389, 390, 74 L. Ed. 969, the Supreme Court said, "It cannot give decisions which are merely advisory; nor can it exercise or participate in the exercise of functions which are essentially legislative or administrative. *Keller v. Potomac Electric Power Co.*, supra, page 444 of 261 U. S., 43 S. Ct. 445, 67 L. Ed. 731, 736, and cases cited; *Postum Cereal Co. v. California Fig Nut Co.*, supra, pages 700-701 of 272 U. S. [693]), 47 S. Ct. 284, 71 L. Ed. 478, [481]; *Liberty Warehouse Co. v. Grannis*, 273 U. S. 70, 74, 47 S. Ct. 282, 71 L. Ed. 541, [544]; *Willing v. Chicago Auditorium Ass'n*, 277 U. S. 274, 289, 48 S. Ct. 507, 72 L. Ed. 880, [884]; *Ex parte Bakelite Corp.*, 279 U. S. 438, 449, 49 S. Ct. 411, 73 L. Ed. 789, [793]."

In *Mitchell v. Wright*, 5 Cir., 1946, 154 F. 2d 924, 928, Cir. J. Lee said: "We have several elements with which we may distinguish legislative and judicial functions, to wit: the element of futurity or retrospect, that of generality or particularity, that of discretion, and that of initiation. A good example of the element of discretion is the determination of a legislative body on the basis of public interest. The judiciary will not interfere with this type of discretion. (Citing *Fed. Communications Commission v. Pottsville Broadcasting Co.*, 309 U. S. 134, 138, 60 S. Ct. 437, 84 L. Ed. 656.) One must be careful, however, not to confuse this legislative discretion with judicial discretion." See also *State ex rel. Ging v. Board of Education*, 1942, 213 Minn. 550, 7 N. W. 2d 544; *Laisne v. Cal. State Board of Optometry*, 1942, 19 Cal 2d 831, 123 P. 2d 457.

As contended by the appellee the sale of alcoholic beverages is a privilege and not a right. As specified in the

Act here in question, the licenses issued thereunder are not regarded as property or as conferring any property rights. The State can control, regulate and prohibit the sale of alcoholic beverages. All licenses for the sale of liquor are granted by the State in the exercise of its police powers. It is a permit granted or withheld at the pleasure of the State. At any time the State may annual or modify or prescribe its conditions. *State v. Maryland Club,* 105 Md. 585, 595, 66 A. 667; *Brown v. Stubbs,* 128 Md. 129, 97 A. 227; *Federico v. Bratten,* 181 Md. 507, 510, 30 A. 2d. 776. *supra.* We are also of opinion that the Legislature which has the power to pass an Act regulating and even prohibiting the sale of alcoholic beverages, has also the power to limit the number of licenses and the location of establishments where these beverages may be sold. 124 A. L. R., pages 825 to 835. The question, however, before us is whether these privileges can be granted or withheld at the pleasure of the Court. Under the Act, now attacked, the Judges of the Circuit Court for Allegany County are required to pass upon at least ten questions. Six of these immediately follow: 1. Whether the petitioners are reputable citizens, or voters or property holders? 2. Whether the petitioners live or own property in the vicinity of the place for which license is applied and whether these petitioners have signed any other petition for license granted under this act? 3. What is considered the vicinity? 4. What if any property is owned by each property holder? 5. Whether the petitioners have been acquainted with the applicant for at least one year? 6. That the petitioners believe the statements made in the application are true.

Under the authority laid down in the case of *McCrea v. Roberts, supra,* these six questions are questions of fact and law upon which the Judge is required to exercise his judgment after hearing the evidence.

The remaining four questions follow: 7. Whether the applicant is a fit person to have a license to sell alcoholic beverages? 8. Whether the place for which the license is applied is a proper one with reference to the

public peace and general welfare of the neighborhood or to the character of the inhabitants? 9. Proper allocation of licenses so as not to exceed one to every fifteen hundred persons. 10. What is a *bona fide* entertainment held by any club, society, or association, for a special license?

Questions seven, eight, nine and ten, upon which the Court is required by the Act to pass, are not questions of law or of fact, nor mixed questions of law and fact.

Suppose the applicant fulfills the first six qualifications hereinbefore pointed out, what is the Court then to try? To what sort of person would the Court be justified in refusing a license? The Act lays down no rule to guide the Court as to who is a fit person for the license. What kind of person is fit to have a license to sell alcoholic beverages and what kind of person is not fit? Surely the Court, if acting judicially, cannot be governed by the individual view of the judges as to drinking, the use of alcoholic beverages, the manner in which these are to be dispensed, whether the holder of the license should be a total abstainer, or one who drinks intoxicating beverages. *Close v. Southern Maryland Agr. Ass'n, supra,* page 642 of 134 Md., page 214 of 108 A. Whether a person is a fit person to have a license to sell alcoholic beverages is a question of public policy or expediency depending upon many matters. *Beasley v. Ridout, supra,* 94 Md. 649, 52 A. 62. It is not a judicial question. The argument has been advanced that as the Court decides as a judicial question whether a person is fit to have custody of an infant, it is likewise a judicial question as to whether a person is fit to have a license to sell alcoholic beverages. In the case of an infant the principle of law is firmly established and a definite guide given that in all cases involving the custody of infants, the welfare of the infant is the primary consideration in determining whether a person is fit to have custody of the infant. In determining whether a person is fit to have a license to sell alcoholic beverages, is the primary consideration

the welfare of the purchaser, the welfare of the seller or manufacturer, the welfare of the seller's or purchaser's family, or the welfare of the public in general? If the last, what is the guide? It is purely a question of expediency and policy and not judicial.

For the same reasons question eight, whether a place is a proper one for a license with reference to the public peace and general welfare of the neighborhood or to the character of the inhabitants, is not a judicial question but one of policy and expediency. No standard is set by the Act to guide the Court. The Court, if acting judicially, cannot be governed by the individual view of the judges. *Close v. Southern Maryland Agriculture Ass'n, supra.* Is such a license to be allowed in a residential district, or in a business district? Is it to be allowed where the majority of people drink or do not drink; where there is a quiet neighborhood or where persons will not object to the sale of alcoholic beverages? It is only necessary to say that this is not a judicial question. *Board of Supervisors v. Todd, supra,* 97 Md. page 264, 54 A. 965. In zoning cases the statutes attempt to classify different businesses and the proper location for each. No such guide is given the Court here.

By question nine, *supra,* the Court is required to restrict the number of licenses of certain classes to not more than one to every fifteen hundred persons residing in Allegany County. As hereinbefore set forth the license granted under this Act is not a right but a privilege. The Court is required to limit the number of licenses. Suppose the Court was able to determine whether persons are fit to have a license to sell alcoholic beverages, how are they to select between people equally fit, which one is to have the privilege? The granting of the license then becomes an appointment by the Judges as in the case of *Beasley v. Ridout, supra,* and as was pointed out in that case, 94 Md. at page 658, 52 A. 66, no argument is needed to show that such a duty sought to be imposed on the Court is not judicial. If the appointment

of a custodian for the Court House was a violation of Article 8 of the Bill of Rights in the case of *Prince George's County Com'rs v. Mitchell,* 97 Md. 330, 55 A. 673, the selection from among those fitted, of the ones to have the alcoholic beverage licenses is equally a violation of that Article.

If the issuance of an alcoholic beverage license is a judicial function, the Courts could be made license bureaus.

For the same reasons as hereinbefore given, no guide is given the Court to answer question ten. What is a *bona fide* entertainment? What is meant by club, society or association? As was said in *Beasley v. Ridout, supra,* no argument is needed to show that such questions are non-judicial.

It is, of course, the rule that in construing a statute all presumptions are in favor of the Act, and it should not be stricken down as void unless it plainly violates a provision of the Constitution. A reasonable doubt in its favor is enough to sustain it. The Courts can be warranted only in a clear case in declaring an Act unconstitutional. *Harrison v. State, to Use of Harrison,* 22 Md. 468, 85 Am. Dec. 658; *McClaughlin v. Warfield,* 180 Md. 75, 23 A. 2d 12. However, when this Court is of opinion that the Legislature has exceeded its authority in placing a non-judicial function on the Court, we should not hesitate in declaring the Act void. *Mayor of Baltimore v. State ex rel. Board of Police of City of Baltimore, supra; Beasley v. Ridout, supra.*

In the light of the prior decisions of this Court we hold that some of the duties imposed on the judges of the Circuit Court for Allegany County by Section 305 are quasi-legislative and hence non-judicial, and that the Act as a whole is unconstitutional and invalid, despite the severability clause. *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 386, 24 A. 2d 911, 916. It was said in that case: "It is sometimes possible for a court to strike down portions of an act and to uphold the remainder. It is never done, however, where the part of

the act remaining after the invalid portions are removed, clearly presents a situation which could not have been intended by the legislature."

The question next arises whether Chapter 140 of the Acts of 1894, and the amendments thereto, *supra,* the old saloon law for Allegany County, is still in effect in Allegany County. Chapter 5, *supra,* being unconstitutional and void, the repeal of any prior law inserted in that Act is void. *State v. Benzinger,* 83 Md. 481, 35 A. 173; *State v. Rice,* 115 Md. 317, 327, 80 A. 1026, 36 L. R. A. N. S., 344, Ann. Cas. 1913A, 1247. Chapter 140 of the Acts of 1894, and the amendments thereto are therefore not repealed by Chapter 5 of the Acts of the Special Session of 1933.

However, Chapter 2 of the Acts of the General Assembly of Maryland (Special Session, 1933) is titled in part: "An Act to add a new Article to the Code of Public General Laws of Maryland, said new Article to follow immediately after Article 2A, to be known as Article 2B, to be entitled 'Alcoholic Beverages,' to license, regulate and control the manufacture and sale of alcoholic beverages within the State of Maryland, and the importation of such beverages into the State * * *." Section 2 of Article 2B prohibits the manufacture and sale of alcoholic beverages without a license.

It is true that Allegany County is exempted from most of the provisions of Article 2B, *supra.* However, Article 2B, Flack's Code, 1943 Supplement, Section 3, Sub-section 1 (a), Manufacturer's License; Sub-section 2 (a), Wholesaler's License; Section 5F, Beer and Light Wine License, Class F, (On Sale) Railroads; Section 6E, Beer, Wine and Liquor License, Class E, (On Sale) Steamboats; Section 6F, Beer, Wine and Liquor License, Class F, (On Sale) Railroads, are in effect in Allegany County as that county is not exempted from these particular state-wide provisions. As Article 2B, *supra,* is in effect, at least partially, in Allegany County and that Article prohibits the manufacture and sale of alcoholic beverages without a license, and as Chapter 140 of the

Acts of 1894, and the amendments thereto, the old saloon law, are so repugnant, contrary, and inconsistent with Article 2B, *supra,* we are of opinion that it is inevitable that Chapter 140 and the amendments thereto, *supra,* are repealed by Article 2B, *supra.* *State v. Clifton,* 177 Md. 572, 574, 10 A. 2d 703; *Lewis v. Gsell,* 183 Md. 123, 128, 36 A. 2d 702.

Allegany County is therefore without an alcoholic beverage Act except as provided by Article 2B, *supra.* The lower court will therefore be affirmed in the denial of the writ of mandamus prayed, and reversed in the denial of the declaratory judgment prayed.

> *Order reversed in part and affirmed in part, and case remanded for entry of a judgment as herein directed. Costs to be paid by appellee.*

MARKELL, J., filed the following dissenting opinion:

For centuries, in England and this country and in other countries, legislatures have tried various ways to regulate—or prohibit—liquor traffic, in order to control and diminish the recognized evils, crime, vice, and disorder, associated with such traffic. Among the earliest and latest methods used for this purpose is to restrict the traffic: (1) to fit persons, (2) in proper places, and (3) in limited numbers only sufficient for the public's need. In England, in 1495 an act was passed whereby justices of the peace were empowered to "put away common ale-selling in towns and places where they should think convenient and to take sureties of keepers of ale-houses in their good behavior." An act of 1551-1552, which introduced licensing, confirmed the power of suppressing common ale-selling, and provided that no one should be allowed to keep a common ale-house or "tippling" house without obtaining the permission of the justices in open session or of two of their number, and directed the justices to take bond from the persons they

licensed and empowered them to try breaches of the conditions of their bonds and to punish the offenders.

In this country, in various states (and colonies), from time to time for three hundred years, through judicial tribunals or executive or administrative agencies, or both, licensing has been in force for the three purposes above mentioned. In the course of the last 100 years almost every conceivable kind of liquor legislation, including state prohibition, "local option" and national prohibition, has been tried without general satisfaction. In 1933, upon repeal of national prohibition, the State of Maryland enacted a comprehensive so-called "general" law, with many different substantive and procedural provisions for various counties and the City of Baltimore, all directed to regulation, through licensing, for the same three purposes. Already the Act has been amended in many provisions. Acts of 1933 (Special Session), ch. 2; Code and 1943 Supplement, Article 2B. At the same 1933 session another act, applicable only to Allegany County, was passed *for the same expressed purposes,* but with different procedure. Acts of 1933 (Special Session), ch. 5.

In Maryland, from time to time for at least 167 years, the power and duty to issue liquor licenses, or to decide whether they shall be issued, has been vested in courts, at other times or in other counties in executive or administrative agencies, with or without "appeal" to, or statutory review by, the courts. The Act of 1780, ch. 24, a general act, "for licensing and regulating ordinary keepers," provided (Sec. 1) that "the justices of each county, in court sitting, be * * * empowered and authorized * * * to grant licenses [1] to such person * * * as they shall think fit, being persons of good repute, to be ordinary-keepers * * * in [2] such and [3] so many places within their * * * counties * * * for the ease and convenience * * * as to them shall seem meet * * *." (Bracketed numbers supplied.) Apparently this statute was in force at least until 1825. The Act of 1816, ch. 193, relating to the Baltimore City

Court, provided (sec. 14) : "That in all cases of applications to the said court for ordinary or retailers' licenses, it shall be in their [the judges'] discretion to grant or refuse the same." The Act of 1818, ch. 170, relating to Kent County, provided (Sec. 1) that the court should not grant the license unless the applicant exhibited the consent in writing of fifty inhabitants of the county, residents of the election district where the selling was to be done and twenty of whom should reside within eight miles of the place; Section 12 provided that nothing in the act made it mandatory on the judges to issue the license but the act left it entirely within their discretion though the applicant conformed with the act. The Act of 1846, ch. 90, provided that it should not be lawful for the clerk of the Montgomery county court to issue a license to sell liquors at any place within a specified locality without an order of one of the judges of said court if he shall be satisfied from the written representation of respectable inhabitants in the neighborhood of "the necessity and propriety of granting such license." The Act of 1884, ch. 270, as amended by the Act of 1888, ch. 57, P. L. L. (1888), Art. 23, secs. 60-73, relating to Wicomico County, authorized issuance, by the clerk of the circuit court, of retail liquor licenses only to inn or tavern keepers, who had beds for the accommodation of guests. The application was required to be accompanied by a certificate of residents stating, *inter alia,* that the applicant was of good moral character and that an inn or tavern was necessary for the accommodation of the public. Section 63 provided for hearings on applications, before the clerk, and that "the clerk may or may not, at his discretion, approve such application" and in order to satisfy himself fully of the propriety of approving it, shall receive remonstrances and hear evidence and arguments, for and against the same, and "the decision of the clerk shall be final; provided that any one aggrieved by his decision may take an appeal to the circuit court * * * and on appeal * * * the same

proceedings shall be had as on appeals from justices of the peace." Section 76 provided: "Judicial powers are hereby conferred on the clerk * * * for the purposes herein mentioned," a provision which may or may not have been constitutional but which clearly indicates that the legislature had no idea that it was imposing non-judicial powers and duties on the courts.

The Act of 1894, ch. 6, relating to Carroll County, held constitutional in *McCrea v. Roberts,* 89 Md. 238, 248, 43 A. 39, 40, 44 L. R. A. 485, authorized issuance of licenses by the clerk in the absence of objection, but provided that if any person filed a written protest against the granting of the license the clerk should present the application and the remonstrance to a judge and the "judge shall proceed to hear and determine the question as to whether the license applied for shall be issued or not." About the same time as the Carroll County Act of 1894 a number of more or less similar acts, providing for judicial action in contested cases, were passed for other localities, including among others the Baltimore county Act of 1890, ch. 334, and the Act of 1892, ch. 433, applicable to the City of Cumberland, extended to the whole of Allegany County by the Act of 1894, ch. 140.

The "general" Act of 1933 provided for approval or disapproval of liquor license applications by administrative boards (Art. 2B, Secs. 16, 18), subject to appeal and hearing *de novo* before another administrative board. Art. 2B, Sec. 63. Section 16 provides that if the original board "determines that [3] the granting of the license is not necessary for the accommodation of the public or [1] that the applicant is not a fit person to receive the license applied for, * * * or [2] that the operation of the business, if the license is granted, will unduly disturb the peace of the residents of the neighborhood in which the place of business is to be located, or that *there are other reasons, in the discretion of the Board, why the license should not be issued,* then the application shall be disapproved and the license applied for shall be

refused." (Bracketed numbers and italics supplied.) Although the statute provided no appeal or review of decisions of the appellate administrative board, this court in *Federico v. Bratten*, 181 Md. 507, 30 A. 2d 776, held that such a decision, based on an erroneous construction of the statute, was subject to the inherent judicial power of review by a court of equity.

It is common knowledge, of which we take judicial notice, that in Baltimore and elsewhere a few years ago public dissatisfaction with the appellate review by the administrative board led to amendment of the statute by substituting, in Baltimore City and certain counties, judicial review by "appeal" in lieu of the administrative "appeal." Acts of 1941, chs. 438 and 686; Acts of 1943, ch. 714; 1943 Supplement, sec. 63. On appeal to the court the action of the local board is presumed "to be proper and to best serve the public interest." The burden of proof is upon the appellant to show "that the decision complained of *was against the public interest* and that the local board's discretion in rendering its. decision was not honestly *and fairly* exercised, *or* that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, *or was unreasonable*, or that such decision was beyond the powers of the board, and was illegal." (Italics supplied.) If, in the opinion of the court, "it is impracticable to determine the question presented to the court, in the case on appeal, without the hearing of additional evidence, or * * * any qualified litigant has been deprived of the opportunity to offer evidence," or "if the interests of justice otherwise require that further evidence should be taken," *the court may hear additional testimony.* (Italics supplied.) Manifestly this statutory "appeal" is broader than the inherent judicial power of review of administrative action.

By the Allegany County Act of 1933 (Section 305) the legislature prescribed the qualifications of licensees, including the same three which, in various forms and with greater or less detail, have been prescribed in practically

every licensing act from the Act of 1780, *supra,* to the "general" Act of 1933—indeed from the first English Act of 1551-1552—*viz.,* that [1] the applicant is "a fit person to be granted such license" and [2] "the place is a proper one with reference to the public peace and general welfare of the neighborhood or to the character of its inhabitants, [3] due regard being given to the number of said licenses issued for said neighborhood," as well as all specific restrictions and conditions set forth in the Act. The Act also provides that, before any applicant is given a license, he must establish these qualifications in a judicial proceeding, contested or uncontested. The above language of section 305 regarding fitness of the person is the same as the Cumberland Act of 1892, and the Allegany County Act of 1894, both of which provided (Sec. 175C) that the court should, in its discretion, whenever in its opinion the applicant was an "unfit person to be granted such license," direct the clerk not to issue the same. Section 175C of the Acts of 1892 and 1894 was in force, without change in this language regarding fitness of the person, until 1933. It was, however, amended in 1902, 1904, 1908 and 1910 by the addition of language regarding fitness of the place, and the number, which since 1910 has been the same as the above language of the Act of 1933.

The majority opinion in the instant case holds that this Act violates the Maryland constitutional declaration of separation of legislative, executive and judicial powers and is unconstitutional, on the alleged ground that the questions as to the existence of the three qualifications above mentioned, *viz.,* fitness of person, place and number, are not judicial questions, are not "questions of law or of fact, nor mixed questions of law and fact"; that "the Act lays down no rule to guide the Court as to who is a fit person for the license"; that "whether a person is a fit person to have a license to sell alcoholic beverages is a question of public policy or expediency depending upon many matters"; that determination of "fitness" to have custody of an infant is governed by "a definite guide,"

*viz.,* that "the welfare of the infant is the primary consideration," but the Act now in question fails to state whether "the primary consideration" in determining "fitness" for a liquor license is "the welfare of the purchaser, the welfare of the seller or manufacturer, the welfare of the seller's or purchaser's family, or the welfare of the public in general," and that if "the welfare of the public" is "the primary consideration" there is no "guide," but "it is purely a question of expediency and policy." Like reasoning is applied to the questions of fitness of place and number.

This conclusion that fitness for issuance of a liquor license is a non-judicial question which cannot be determined by a court when duly presented to it pursuant to express statutory provision is unsupported by any authority, is contrary to the decision of this court in *McCrea v. Roberts, supra,* to the few decisions in other states where the validity of such legislation has ever been questioned, and to the unbroken recognition of the validity of such legislation in Maryland, from 1780 to date, by every branch of government, legislative, executive and judicial, including our own predecessors, many of whom, as judges of this court, were judges of county courts or circuit courts which enforced such legislation, and three of whom were Chief Judges of this court and of the Circuit Court for Allegany County while the successive acts of 1892 or 1894 or 1933 were in force and were enforced by that court.

Due respect for a coordinate branch of government requires that, in case of doubt, we sustain the constitutionality of legislation and that, of two permissible constructions of a statute, we adopt one which will make the statute constitutional and not one which will invalidate it. Like respect for our own predecessors and for the history of all the branches of government requires that we should not lightly ignore or condemn that history in order to hold that every saloon license in Allegany County is void and every sale made there since 1894 is a crime. Historical considerations are especially weighty

in construing or applying a constitutional provision so incapable of exact definition as the separation of powers.

Common knowledge of the purpose of licensing legislation for centuries, and multitudinous decisions of the Supreme Court and other courts for at least 100 years (ever since the *License Cases*, 5 How. 504, 12 L. Ed. 256), leave no room for doubt as to "the primary consideration" governing determination of "fitness" for a liquor license. Liquor license legislation is primarily an exercise of the police power. The "primary consideration" is welfare of the general public, in respect of suppression or diminution of crime, vice and disorder, which have always been associated with the liquor traffic, including the welfare of portions of the general public who would be specially injured by these evils, *e. g.*, inhabitants of residential neighborhoods.

*Any* question of law or fact which is made the basis of a legal right, when a court is given jurisdiction to hear and determine by a final judgment the existence of the legal right, is a *judicial* question. This is true, regardless of whether the particular question might or might not, by different legislation, be withdrawn from judicial determination and submitted, as a "quasi-judicial" question, to an executive (*i. e.*, "administrative") board for decision, subject to the *inherent* power of judicial review or to broader statutory review of "appeal." The same question may, alternately or consecutively, be a quasi-judicial question before an administrative body and a judicial question before a court, *e. g.*, workmen's compensation and, in many instances, zoning. Federal tax liability may be determined, at the option of the taxpayer, by an administrative board (the "Tax Court," formerly "Board of Tax Appeals") or by the judicial courts on suit for refund. At one time the same question could be determined by the administrative board and by the courts in a subsequent suit. *Old Colony Trust Co. v. Commissioner of Int. Rev.*, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. A question is not a nonjudicial question merely because it may be a difficult

question, *e. g.*, whether a series of business transactions constitute a "due" or "undue" restraint of commerce. Such a question may take years to try, but must be decided by a court alone and in a criminal case by a judge and jury. *Nash v. United States,* 229 U. S. 373, 33 S. Ct. 780, 57 L. Ed. 1232 (opinion by Holmes, J.).

The separation of powers prohibits delegation or transfer of powers which are *inherently and exclusively* judicial or non-judicial. The legislature cannot deprive the courts of their inherent power to review administrative action or decisions to the extent of determining whether such decisions are contrary to constitution or statute, *e. g.*, whether they are unsupported by substantial evidence or are arbitrary or capricious. On the other hand, the legislature cannot impose on the courts powers or duties which are essentially non-judicial, *e. g.*, "auditing" accounts, without power to enter judgment and require payment. *Case of Hayburn,* 2 Dal. 409, 1 L. Ed. 436; *Robey v. County Com'rs of Prince George's County,* 92 Md. 150, 48 A. 48. *Cf. Gordon v. United States,* 1864, 2 Wall. 561, 17 L. Ed. 921; *Id.,* 117 U. S. 697, and *De Groot v. United States,* 1866, 5 Wall. 419, 18 L. Ed. 700. The remark in the Robey case that a power cannot be judicial in one county and non-judicial in another is applicable only to powers which are thus *inherently* and *exclusively* judicial or non-judicial. The majority opinion in the instant case cites *Beasley v. Ridout,* 94 Md. 641, 52 A. 61, as supporting the conclusion that the question of fitness for a liquor license is "a question of public policy or expediency" and "not a judicial question." In that case a statute empowering the judges to appoint "visitors" to control and supervise a jail was held unconstitutional. The appointment of executive officers and employees, such as jailers, is a non-judicial function of the *political* departments of the government. Manifestly it was not the intent of the legislature to make the liquor traffic a political football (whether of party politics, factional politics or liquor politics) by subjecting the issuance of licenses to political control, like appointment of jailers.

Though a liquor license is not a *property* right but a right or privilege which may be repealed and withdrawn by the legislature at any time, nevertheless such a license, or the right to obtain such a license, until so repealed, is a *legal* right, to be granted, denied or revoked according to law and not a favor to be granted or withheld at the whim of any executive or "administrative" board or officer. *Federico v. Bratten, supra.* In Allegany County this legal right must be established in a judicial proceeding. All questions of law and fact, including the questions of fitness, to be determined in such a proceeding, are therefore judicial questions.

Questions of "fitness" are not novel subjects for the exercise of judicial power. For generations courts and juries decided questions of fitness of fellow-servants employed by a master. Fitness of licensees is principally disposition and capacity (which are not universal) to obey, and induce obedience to, liquor laws and other criminal laws. For centuries the common law as to nuisances, enforced at law, in equity and by criminal prosecutions, included questions as to "proper places" for particular businesses. *Poe on Pleading,* sec. 203. Both before and since the initiation of zoning legislation, courts in a number of states have passed upon the question whether an undertaking establishment in a residential neighborhood is a nuisance. *Jack Lewis, Inc. v. Mayor and City Council of Baltimore,* 164 Md. 146, 155-159, 164 A. 220; see also notes and cases cited, 23 A. L. R. 745; 43 A. L. R. 1171; 87 A. L. R. 1061. Under the Allegany County Act, as in nuisance cases, what is a "proper place" is not a political question, to be determined by political pressure or according to the political views of inhabitants, but a judicial question, dependent upon the relative convenience and inconveniences to inhabitants. Inhabitants of rural or suburban neighborhoods may drink themselves, but their personal enjoyment and property values may be seriously impaired by proximity of a saloon. On the other hand, residents of not exclusively residential neighborhoods—of whom there are thousands in Baltimore

and many in Cumberland and other cities and towns—
may not drink themselves but may not be seriously in-
convenienced by the addition of a saloon to the other
disturbances of urban life. The question of fitness or
necessity of numbers has been decided by this Court
with respect to licensing filling stations in the absence
of zoning laws and also under zoning laws. *Pocomoke
City v. Standard Oil Co.,* 162 Md. 368, 159 A. 902;
*Kramer v. Mayor and City Council of Baltimore,* 166
Md. 324, 171 A. 70; *Mayor and City Council of Baltimore
v. Biermann,* 187 Md. 514, 50 A. 2d 804. The fact that
a constitutional question as to the extent of the police
power is involved could not make a non-judicial ques-
tion a judicial question. Exclusively political questions
are non-judicial questions even when they are constitu-
tional questions. *Luther v. Borden,* 7 How. 1, 12 L. Ed.
581; *Com. of Massachusetts v. Mellon,* 262 U. S. 447,
43 S. Ct. 597, 67 L. Ed. 1078. The Allegany County
Act does not require the court "to select between
people equally fit, which one is to have the privilege,"
if two such identical twins could be found. As in other
cases, the court decides cases as they come before it.
Whenever a sufficient number (or the statutory maxi-
mum number) of licenses have been authorized, further
applications must be disapproved for this reason.

If the majority opinion means anything more than
that judges regard hearing liquor license applications
as an unfit duty for judges, it invalidates not only the
Allegany County Act but also the "general" Act, both
with respect to "appeals" to the courts and also with
respect to the uncharted delegation of powers to the
original licensing boards. When legislation is ex-
pressed in general terms, *e. g.,* the Sherman Act, 15 U. S.
C. A., Secs. 1-7, 15 note, it is the duty of the courts to
apply the general terms to particular facts by *construing*
the statute. The Constitution does not require the Legis-
lature to furnish the court "definite guides" to the con-
struction of a statute. But the Constitution does re-
quire that delegation of "quasi-judicial" powers to ad-

ministrative boards be limited by "definite guides" and not left to the whim of executive officers. *Sugar v. North Baltimore M. P. Church,* 164 Md. 487, 165 A. 703; *Jack Lewis, Inc. v. Mayor and City Council of Baltimore,* 164 Md. 146, 164 A. 220; *Goldman v. Crowther,* 147 Md. 282, 128 A. 50, 38 A. L. R. 1455. The "general" Act delegates to the licensing boards not only the usual questions of fitness of time, place and number but discretionary powers expressed in much broader language, *supra.* The "appeals" to the courts are broader than the inherent power of judicial review of administrative action, *supra.* If the questions of fitness are beyond judicial ken in the first instance, these and broader questions are also beyond the power of legislative delegation to administrative bodies and beyond the ken of the courts on "appeal."

The Pennsylvania courts have long held, without question as to constitutionality, that the courts exercise a judicial function—and a judicial, not an arbitrary discretion—in determining fitness in either a contested or an uncontested case, before issuance of a liquor license. *Schlaudecker v. Marshall,* 72 Pa. 200; *Petition of Raudenbusch,* 120 Pa. 328, 14 A. 148. In *State v. Gorman,* 171 Ind. 58, 85 N. E. 763, there was no remonstrance before a board of commissioners, but the board refused a license; the applicant appealed to a court, under a statutory provision for trial *de novo* involving the question whether the applicant was a "fit person." The Supreme Court of Indiana held that the board, either with or without a remonstrance, acts judicially, and upheld the right of the lower court to hear the appeal. In *State ex rel. Patterson v. Bates,* 96 Minn. 110, 115-119, 104 N. W. 709, 113 Am. St. Rep. 612, the validity of a statute which placed duties upon the judicary in the issuance of liquor licenses, was sustained against a contention that the statute was contrary to a constitutional declaration of the separation of powers. In Connecticut "the question of the suitability of person and place is so far judicial in its nature that it may constitutionally be made the

subject of an appeal to the Superior Court" (*Appeal of Malmo,* 72 Conn. 1, 6-7, 43 A. 485) ; the issuance of liquor licenses "lies on the border line of the division between executive and judicial power, and * * * it is competent for the legislature to commit its exercise either to judicial or executive officers, as may be found necessary for the most efficient enforcement of its police regulations." (*Appeal of Hopson,* 65 Conn. 140, 146, 31 A. 531, 532; *DeMond v. Liquor Commission,* 129 Conn. 642, 644, 30 A. 2d 547) ; from 1644 to 1854 (when prohibition was adopted) selection of licensees was usually made by legislative or executive authorities, but determination of fitness was a judicial question. *Appeal of Malmo, supra.*

Appellant's contention that the *declaration* of separation of powers in the Maryland Declaration of Rights is more rigid and restrictive than the *actual* separation of powers in the constitutions of other states and of the United States, is groundless. In *McCrea v. Roberts, supra,* this court quoted *Crane v. Meginnis,* 1 G. & J. 463, 476, 19 Am. Dec. 237, recognizing that nowhere are the separate departments kept wholly separate and unmixed. If the separation were rigid, in Maryland or elsewhere, it would have prevented the enormous growth of "administrative law" in the last forty years by delegation of "quasi-legislative" and "quasi-judicial" powers to executive or "administrative" agencies. With respect to imposition of *non-judicial duties* on courts or judges, the Constitution of the United States has been more strictly construed than the Maryland Declaration of Rights. In *Keller v. Potomac Electric Co.,* 1923, 261 U. S. 428, 43 S. Ct. 445, 67 L. Ed. 731, the Supreme Court *sua sponte* held that a valuation of the property of a utility by a commission, for the purpose of *future* rate regulation, was a legislative, not a judicial power, and power to review such a valuation (apart from any actual fixing of rates) could *not* be imposed upon the Supreme Court. In *Miles v. Public Service Commission,* 1926, 151 Md. 337, 135 A. 579, 49 A. L. R. 1470, this court

made no such point, and in *Potomac Edison Co. v. Public Service Commission,* 1933, 165 Md. 462, 169 A. 480, in an opinion by Judge Parke, it expressly held such a valuation appealable. In *Baltimore City v. Bonaparte,* 93 Md. 156, 48 A. 735, cited in the majority opinion, the decision of this court was narrower than its opinion. On appeal by a taxpayer, from a tax assessment, to the Baltimore City Court, the court, on a hearing *de novo* reduced the assessment. On appeal by the City to this court, this court held that valuation for taxation was not a judicial function, but instead of setting aside the valuation of the lower court, affirmed it. In effect, valuation for taxation was a judicial function in the lower court but not in this court.

Appellant's contention that judicial power is not applicable to uncontested proceedings is also groundless. In many matters the jurisdiction of the federal courts is limited to "controversies"—because the Constitution of the United States expressly says so, not because the nature of "judicial power" is so limited. Judicial power is equally applicable to contested or uncontested cases. Otherwise it would not be applicable to cases of voluntary bankruptcy, uncontested divorce cases, judgments by default or pleas of guilty or *nolo contendere.* The difference in this respect between the Carroll County Act sustained in *McCrea v. Roberts, supra,* and the Allegany County Act of 1933 is substantially the same as the difference between a judgment by default entered by the clerk, and a judgment under a Speedy Judgment Act, extended by the judge, or a divorce, which may likewise be granted only by the judge after judicial determination of the right, whether contested or not. The Act of 1933, in effect, merely withdrew from the clerk authority to enter a judgment by default for an applicant for a liquor license.

The majority opinion also holds the courts impotent to decide what is a *"bona fide* entertainment." For many years courts have been deciding, in criminal cases, whether holders of hotel or club licenses are *bona fide*

hotels or clubs. The question what is a *bona fide* entertainment is no more insuperable. Furthermore, if the separability clause (section 3) of the Act means anything at all, invalidity of the provisions for "special licenses" for "entertainments" would not invalidate the provisions for regular saloon licenses.

One of the extraordinary features of the disposition of the instant case is that the judicial power is held impotent to decide the question of legal right to a liquor license, but is held able to decide its own impotence by a declaratory judgment at the suit of a plaintiff who has no legal right or interest whatever, actual or potential, present or future, in the subject matter. By the majority opinion the Act of 1894, under which appellant asks a license, has been repealed and has always been unconstitutional for the same reason for which the Act of 1933 is held unconstitutional.

I think the Act is constitutional and the order should be affirmed.

Judge DELAPLAINE authorizes me to say that he concurs in this opinion.